CHARLES CARNOCK, Plaintiff-Appellant, v. THE CITY OF DECATUR, Defendant-Appellee.

Fourth District   No. 4—93—0281

Argued September 14, 1993.—Opinion filed December 30, 1993.— Rehearing denied January 27, 1994.

Marshall A. Susler (argued) and William A. McNutt, both of Lowe, Moore, Susler, McNutt & Wrigley, of Decatur, for appellant.

John W. Couter (argued), of Decatur, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In November 1992, plaintiff, Charles Carnock, filed suit against defendant, City of Decatur, seeking to recover an underpayment for unused sick days he accumulated prior to retiring. The trial court dismissed the action on defendant's motion for plaintiff's failure to exhaust the grievance procedure provided in the collective-bargaining agreement prior to filing suit. Plaintiff appeals, arguing that (1) his claim was not a "grievance," as the collective-bargaining agreement defined that term, and therefore exhaustion of the grievance procedure was not required; and (2) even if his claim was a grievance, exhaustion was not required because (a) he was retired and therefore no longer "an employee" within the scope of the agreement, and (b) Local Union 505, International Association of Firefighters, AFL-CIO, CLC (Union), refused to represent him.

We reverse and remand.

I. BACKGROUND

From January 1, 1959, to July 1, 1988, defendant employed plaintiff as a firefighter. He was a member of the Union, the exclusive collective-bargaining representative for the classified service employees of the fire department. In January 1988, plaintiff suffered a heart attack and was placed on sick leave. Because of his medical disability, he was unable to return to work, and he retired in July 1988.

At the time of his retirement, a collective-bargaining agreement was in effect between the Union and defendant. It contained two separate provisions regarding the payment of unused sick days. For an employee on sick leave who was unable to return to work, article 13, section 6, of the agreement provided as follows:

"If an employee is on sick leave and it is determined by a physician that said employee will be unable to return to work within an amount of time equivalent to his remaining unused sick leave; said employee must apply for disability benefits if he is eligible for such benefits and if granted, sick leave payment

will be stopped. If disability is awarded by the employee's retirement fund, he may choose to be paid for his unused sick leave at one-half his normal daily rate of pay for each 1.4 unused sick leave days or he may retain his remaining sick leave and be credited therewith if and when he returns to duty."

Article 13, section 8, of the agreement provided the following: "Upon retirement from the classified fire fighting service, an employee shall be paid $5 for each day of his unused accumulated sick leave."

Plaintiff applied for disability benefits and elected to be paid for his remaining accumulated unused sick days. At the time of his retirement, he had 74.8 unused sick days, and his daily wage rate was $292.77. Under the formula provided by article 13, section 6, he was entitled to receive $7,821.62. However, defendant paid him $374 or $5 per day, an underpayment of $7,447.63. Plaintiff did not discover the underpayment until January 1992, when he learned that another firefighter retired and had been paid in accordance with article 13, section 6. Upon discovering the underpayment, plaintiff contacted the fire chief, Donald Minton, who indicated that defendant refused to pay him the difference.

Plaintiff also contacted Tom Durbin, the president of the Union, regarding the error made by defendant and asked the Union to intervene on his behalf. By affidavit, Durbin stated that when plaintiff contacted him, plaintiff was no longer an active employee of the fire department, no longer paid Union dues, and was no longer subject to the provisions of the collective-bargaining agreement. The Union's lawyer told plaintiff that because of his status as a retiree, the Union no longer had a duty to represent him in such matters and was not obligated to initiate any type of grievance. The Union's attorney advised plaintiff that he had no avenue to pursue his claim within the Union, and he should seek private counsel. Accordingly, the Union would not represent him or pursue any remedies on his behalf.

As a result, in November 1992, plaintiff filed a four-count complaint against defendant, seeking compensation in accordance with article 13, section 6, of the collective-bargaining agreement. In response, defendant filed a motion to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—619) alleging plaintiff failed to exhaust the grievance procedure. The court subsequently granted this motion, and plaintiff appeals.

Attached to plaintiff's memorandum of law in opposition to defendant's motion to dismiss was an affidavit from Chief Minton, which indicated that he had prepared the form detailing the reason

for plaintiff's separation from the fire department and computed plaintiff's final paycheck. Minton asserted that when he did so, he was unfamiliar with the provision of the collective-bargaining agreement, which provided that an employee who retired by reason of a medical disability was entitled to be paid one-half his normal daily rate of pay for each 1.4 unused sick leave days. He admitted he mistakenly computed plaintiff's compensation at $5 per day for the 74.8 unused sick days, an oversight on his part and on the part of defendant.

## II. ANALYSIS

While this appeal presents several issues, we address only plaintiff's argument that he was exempted from the exhaustion requirement because he was retired and therefore no longer a member of the bargaining unit or an employee of defendant. Our resolution of this issue makes it unnecessary to resolve the remaining contentions before the court.

As a general rule, employees claiming rights under a collective-bargaining agreement are required to exhaust remedies provided in the agreement before bringing suit against their employer in the circuit court. (Ill. Rev. Stat. 1991, ch. 48, par. 1616; *United Paperworkers International Union v. Misco, Inc.* (1987), 484 U.S. 29, 37, 98 L. Ed. 2d 286, 298, 108 S. Ct. 364, 370; *Clayton v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America* (1981), 451 U.S. 679, 681, 68 L. Ed. 2d 538, 544, 101 S. Ct. 2088, 2091; *Republic Steel Corp. v. Maddox* (1965), 379 U.S. 650, 652, 13 L. Ed. 2d 580, 583, 85 S. Ct. 614, 616.) As the Supreme Court stated in *Republic Steel*:

> "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress. If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available. [Citations.] But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf." (Emphasis in original.) *Republic Steel*, 379 U.S. at 652-53, 13 L. Ed. 2d at 583, 83 S. Ct. at 616.

The rule in *Republic Steel*, however, is not absolute. "[T]he exhaustion requirement is subject to a number of exceptions for the variety of situations in which doctrinaire application of the exhaustion

rule would defeat the overall purposes of federal labor relations policy." (*Glover v. St. Louis-San Franciso Ry. Co.* (1969), 393 U.S. 324, 329-30, 21 L. Ed. 2d 519, 524, 89 S. Ct. 548, 551; see also *Vaca v. Sipes* (1967), 386 U.S. 171, 185-86, 17 L. Ed. 2d 842, 854-55, 87 S. Ct. 903, 914-15.)

> "[B]ecause these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures." *Vaca*, 386 U.S. at 185, 17 L. Ed. 2d at 854-55, 87 S. Ct. at 914.

Plaintiff argues that one such exception is for retirees who are not members of the bargaining unit and to whom the collective-bargaining agreement does not apply.

In *Anderson v. Alpha Portland Industries, Inc.* (8th Cir. 1985), 752 F.2d 1293, the court held retired employees were not required to exhaust contractual remedies prior to bringing an action against their employer to recover insurance benefits under the collective-bargaining agreement. The court reasoned retirees were outside the collective-bargaining relationship, and the union did not owe them any duty of fair representation because they were not employees in the bargaining unit. The court also found that the language of the collective-bargaining agreement could not be read as requiring exhaustion of grievance procedures by retirees. The relevant provisions addressed only grievances of "employees" and spoke only of "employees" initiating contractual dispute resolution proceedings. The court, therefore, concluded it could not infer from the agreement that the parties intended to require retirees to rely on the union to handle their grievances. Moreover, the court found the context of the grievance procedure which involved taking complaints to a foreman or plant manager was oriented toward active employees initiating disputes, not retirees who did not have a "workplace." It also maintained the grievance procedure was not the exclusive mechanism for resolving disputes and concluded that the language of the contract did not mandate exhaustion of the grievance procedures. *Anderson*, 752 F.2d at 1298-1300.

In resolving this issue, the court in *Anderson* analogized the situation of the retired employee to the situation of the pension trustees in *Schneider Moving & Storage Co. v. Robbins* (1984), 466 U.S. 364, 80 L. Ed. 2d 366, 104 S. Ct. 1844. In *Schneider*, the trustees of multiemployer trust funds brought an action to enforce contribution and audit

provisions against certain participating companies. The district court dismissed the suit pending exhaustion of remedies under the collective-bargaining agreement. The Court of Appeals for the Eighth Circuit reversed and remanded. (*Robbins v. Prosser's Moving & Storage Co.* (8th Cir. 1983), 700 F.2d 433.) The Supreme Court affirmed the Court of Appeals. It rejected the applicability of a presumption in favor of arbitrability and then found that there was no express contractual language requiring, nor any indication of intent by the parties to require, exhaustion in regard to a trustee's claims relating to the fund. Moreover, it concluded a union's duty of fair representation applied only to the members of the collective-bargaining unit and not to pension fund trustees. It therefore concluded that the parties to the collective-bargaining agreement did not intend to require the trustees to rely on the union to arbitrate their disputes with the employer. *Schneider*, 466 U.S. at 375-76, 80 L. Ed. 2d at 375-76, 104 S. Ct. at 1850-51.

The Eighth Circuit in *Anderson* also relied on *Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.* (1971), 404 U.S. 157, 30 L. Ed. 2d 341, 92 S. Ct. 383, to support its conclusion that exhaustion of grievance procedures was not required for retirees. The Supreme Court in *Allied* held that retirees were not "employees" within the meaning of the National Labor Relations Act (see 29 U.S.C. §§151 through 168 (1970)), and a union had no duty to represent their interests. Moreover, the Court held they could not properly be joined with active employees in a collective-bargaining unit that the union represented because the two groups "do not share a community of interests broad enough to justify inclusion of the retirees in the bargaining unit." (*Allied*, 404 U.S. at 173, 30 L. Ed. 2d at 354, 92 S. Ct. at 394.)

> "Pensioners' interests extend only to retirement benefits, to the exclusion of wage rates, hours, working conditions, and all other terms of active employment. Incorporation of such a limited-purpose constituency in the bargaining unit would create the potential for severe internal conflicts that would impair the unit's ability to function and would disrupt the processes of collective bargaining. Moreover, the risk cannot be overlooked that union representatives on occasion might see fit to bargain for improved wages or other conditions favoring active employees at the expense of retirees' benefits." (*Allied*, 404 U.S. at 173, 30 L. Ed. 2d at 354, 92 S. Ct. at 394.)

Moreover, the Court found pensioners' benefits were not a mandatory subject of bargaining. Because retirees were not included in the bar-

gaining unit or "employees," the Court concluded no unfair labor practice occurred by the employer unilaterally modifying the pension and insurance benefits of its retired employees.

In response, defendant argues plaintiff's situation is different from the retirees in *Anderson* because he has not retired but is rather on disability leave and is more akin to situations arising in cases where employees are laid off or are seeking disability benefits. Besides the status of plaintiff, defendant argues plaintiff should be required to exhaust contractual remedies because of the nature of his claim. See *Roman v. United States Postal Service* (7th Cir. 1987), 821 F.2d 382; *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (wherein employee seeking disability benefits was required to exhaust grievance procedure prior to filing suit); *Republic Steel*, 379 U.S. at 656, 13 L. Ed. 2d at 585, 85 S. Ct. at 618; *Hope v. Continental Baking Co.* (E.D. Va. 1990), 729 F. Supp. 1556.

As a preliminary matter, we note that motions to dismiss under section 2—619 of the Code admit all well-pleaded facts, together with all reasonable inferences which can be drawn from those facts, but do not admit conclusions unsupported by allegations of specific facts on which such conclusions rest. (*Munizza v. City of Chicago* (1991), 222 Ill. App. 3d 50, 52, 583 N.E.2d 561, 563; *Falk v. Martel* (1991), 210 Ill. App. 3d 557, 560, 569 N.E.2d 248, 250.) A reviewing court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. *Munizza*, 222 Ill. App. 3d at 52, 583 N.E.2d at 563.

The complaint alleged that "[i]n June 1988, it was determined [plaintiff] would not be able to return to work, and [p]laintiff was retired by reason of his medical disability." This sentence suggests plaintiff was retired and not merely on disability. Therefore, for purposes of determining whether a cause of action was stated upon which relief could be granted, defendant has admitted that plaintiff was retired. Moreover, the City paid plaintiff $5 for each unused sick leave day in accordance with article 13, section 8, of the bargaining agreement, which applies upon the *retirement* of a firefighter from service. Consequently, the City must have believed plaintiff was retired.

Because we find plaintiff was retired, we hold he was not required to exhaust the contractual remedies prior to bringing suit. (See *Anderson*, 752 F.2d at 1298-1300.) Moreover, plaintiff no longer performed any services for the fire department, was not paid any wages and therefore was no longer a member of the bargaining unit represented by the Union or an employee of defendant. The language of

the collective-bargaining agreement only requires disputes between the City and the Union or *an employee covered by the agreement* to be subject to the grievance procedure. Although the contract does not define "employee," we construe that term as applying only to "active" employees, not retirees. Because he was not covered by the agreement, he should not have to exhaust the grievance procedures. While a grievance may ultimately be submitted by an employee, under the terms of the agreement, only the Union here may advance the grievance to arbitration. As the Supreme Court in *Allied* made clear, however, a union has no obligation to represent retirees, who are outside the collective-bargaining unit. Without having the union representation, it would seem fruitless to have them exhaust the grievance procedure. As courts have pointed out, there is difficulty in representing active employees and retirees in the negotiation process, as well as in the contract administration process. Given the limited resources of unions, they must choose which grievances to pursue. Union leadership may legitimately decide to use those limited resources to serve only the interests of the active employees, not those of the union retirees.

Moreover, the collective-bargaining agreement in the present case does not clearly indicate that retirees are covered thereunder and must exhaust grievance procedures prior to filing suit. The collective-bargaining agreement does not support an inference that the parties intended retirees to exhaust the contractual provisions prior to filing suit.

### III. Conclusion

For the reasons stated, we reverse the order of the circuit court dismissing plaintiff's complaint and remand for further proceedings.

Reversed and remanded.

McCULLOUGH, P.J., and COOK, J., concur.