WILLIAM MAHONEY *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—96—3113

Opinion filed October 30, 1997.

Gerald A. Goldman, Arthur R. Ehrlich, and Jonathan C. Goldman, all of Goldman & Ehrlich, of Chicago, for appellants.

Patricia T. Bergeson, Acting Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Ruth Masters, Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

Can Chicago firefighters who are members of the firefighter's union bring suit, as individuals, against the city for claimed irregularities in the city's method of promoting? Our answer is no, not under the circumstances of this case.

BACKGROUND

In compliance with affirmative action provisions within the collective bargaining agreement between the Chicago Fire Fighter's Union, Local No. 2 (the Union), and the City of Chicago (City), minority firefighters were promoted to the position of lieutenant over nonminority firefighters who scored higher on the 1979 promotional exam. In 1987, a new promotional exam was given and a new eligibility list generated. The 1979 list was retired.

In March 1988, William Mahoney, whose name was next on the 1979 eligibility list, filed a grievance through the Union according to the procedures outlined in the collective bargaining agreement with the City. The Union then joined Mahoney's grievance with a class grievance against the City on behalf of the remaining nonminority firefighters on the 1979 eligibility list. The Union requested the City fill vacancies for the position of lieutenant using the 1979 list until it was exhausted, before using the 1987 eligibility list. The City denied the grievance. Arbitration was requested but never pursued by the Union. The grievances never were resolved.

In December 1991, 32 nonminority firefighters, including Mahoney, filed a four-count complaint against the City, alleging the promotion of minority firefighters in compliance with the Albrecht consent decree[1] violated their equal protection and due process rights, and breached City personnel laws and the collective bargaining agreement. In May 1993, the complaint was dismissed in part and leave was granted plaintiffs to file an amended complaint.

In June 1993, 27 nonminority Chicago firefighters, including Mahoney, who took and passed the 1979 lieutenant's promotional exam, filed an amended complaint against the City of Chicago in the circuit court of Cook County. They alleged the City's failure to fill lieutenant position vacancies by selecting candidates in strict rank order from the eligibility list generated from the 1979 lieutenant's promotional exam: (1) violated their constitutional right to equal protection; (2)

---

[1]Suits had been brought in federal court alleging that the Chicago fire department utilized promotional policies and practices (including the 1979 lieutenant's promotional exam) that discriminated against African-Americans and Hispanics. On March 31, 1980, a consent decree was entered in the case, United States v. Albrecht, in which the City of Chicago agreed, pending the design and implementation of nonrace-biased examinations and procedures, to promote one minority firefighter for every four white firefighters. It was further agreed the passing score for minority candidates on the 1979 promotional exam could be reduced below 70, but not more than "one standard deviation below the mean score obtained" by minority candidates on the test.

resulted in a taking of a property interest without due process; (3) violated City personnel rules; and (4) breached an implied contract based on the City's personnel rules. Plaintiffs also contended the City promoted unqualified minority candidates who failed the promotional test by more than one standard deviation of the mean score for minority candidates (as set forth in the Albrecht consent decree), and that the 1979 list should not have been retired until the nonminority candidates with a passing grade who remained on the 1979 list received promotions. Plaintiffs sought compensatory damages of $125,000 for each plaintiff, an injunction requiring the City to promote each plaintiff to the rank of lieutenant, retroactive pay and benefits, and attorney fees and costs.

The equal protection claim was dismissed and that ruling is not being challenged. As to the other three counts, the trial court granted summary judgment in favor of the City. The court found all plaintiffs, other than Mahoney, had failed to exhaust their remedies under the collective bargaining agreement because they had not filed an individual grievance with the Union. As to Mahoney, the court found the Union's failure to proceed to arbitration did not preclude a finding that Mahoney had exhausted his remedies under the collective bargaining agreement.

Nonetheless, the court found Mahoney's claim was collaterally estopped by the arbitration decision issued in the so-called "Benn case." See Chicago Fire Fighters Union, Local No. 2 v. City of Chicago, Arbitration Nos. 51—390—0531—86—B, 51—390—0161—87—B (May 23, 1988) (issued by Arbitrator Edwin H. Benn). In that case the arbitrator determined it was not a violation of the collective bargaining agreement for the City to pass over nonminority candidates who scored higher grades on the 1979 captain's and engineer's promotional exams to promote minority candidates who scored below the "passing grade" of 70. The arbitrator also ruled that the City could retire the 1979 eligibility list for the position of engineer and begin use of the 1986 promotional eligibility list without first promoting all eligible candidates passed over on the 1979 eligibility list.

Plaintiffs appeal the summary judgment order entered against them.

DECISION

All of the plaintiffs are members of the Chicago Fire Fighter's Union, Local No. 2, a labor organization designated as the plaintiff's exclusive representative for the purposes of collective bargaining. 5 ILCS 315/6 (West 1996). The Union has the statutory authority and duty to fairly represent all of its members in the negotiation of the

collective bargaining agreement with the City and to enforce the terms of the collective bargaining agreement. 5 ILCS 315/7 (West 1996).

■ The Union represents the interests of its members with respect to rates of pay, wages, and other conditions of employment. 5 ILCS 315/6 (West 1996). The criteria used for determining promotions are mandatory subjects of bargaining. *Village of Franklin Park v. Illinois State Labor Relations Board*, 265 Ill. App. 3d 997, 638 N.E.2d 1144 (1994).

Despite the fact plaintiffs identify their claims as constitutional violations or a breach of personnel rules, when they challenge the City's method of filling promotional vacancies they are questioning the City's compliance with the collective bargaining agreement. For this reason, plaintiffs are required to at least attempt to exhaust their remedies under the collective bargaining agreement before they are able to bring suit against the City in the circuit court. *Quist v. Board of Trustees of Community College District No. 525*, 258 Ill. App. 3d 814, 818, 629 N.E.2d 807 (1994); *Carnock v. City of Decatur*, 253 Ill. App. 3d 892, 625 N.E.2d 1165 (1993). Plaintiffs must allege on the face of their complaint that the grievance procedures were followed and exhausted. *Quist*, 258 Ill. App. 3d at 818.

We must determine whether the plaintiffs have exhausted their remedies under the collective bargaining agreement. The trial court held that Mahoney had exhausted his remedies, but the other plaintiffs had not. The court treated Mahoney differently because he had filed an individual grievance with the Union and the others had not.

We do not believe that this distinction is of any significance. The Union filed a class grievance on behalf of all remaining nonminority candidates on the 1979 lieutenants' eligibility list, but never pursued arbitration. All of the plaintiffs were covered by this class grievance filed in their names. There is no valid reason to treat any of the plaintiffs differently when we determine the issue of standing.

The controlling question is whether Mahoney and the other plaintiffs establish standing to sue the City even though they do not challenge their union's failure to pursue final and binding arbitration of the promotion dispute.

In *Carnock*, 253 Ill. App. 3d at 895, the court quoted *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53, 13 L. Ed. 2d 580, 583, 85 S. Ct. 614, 616 (1965), with favor, noting that, in general, individual employees wishing to assert contract grievances must attempt to use the grievance procedure, but " '[i]f the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available.' "

In *Vaca v. Sipes*, 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903 (1967), a union-represented employee brought suit against his employer in state court for wrongful discharge, claiming a breach of the collective bargaining agreement, after the union refused to take the grievance to arbitration. The court said:

> "However, if the wrongfully discharged employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted. Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement. [Citation.] However, because contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures." 386 U.S. at 184-85, 17 L. Ed. 2d at 854-55, 87 S. Ct. at 914.

■ The *Vaca* court went on to say it would "be a great injustice" to leave an employee remediless when the union, which has the sole power to invoke the higher stages of the grievance procedure, prevents the employee from exhausting his contractual remedies by wrongfully refusing to process the grievance. 386 U.S. at 185-86, 17 L. Ed. 2d at 855, 87 S. Ct. at 914. In *Vaca* the court found that the employee could seek judicial redress of his claim, "provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." 386 U.S. at 186, 17 L. Ed. 2d at 855, 87 S. Ct. at 914. To hold otherwise, said the court, would give the employee the ability to compel arbitration regardless of the merit of the claim. This would cause the settlement machinery provided by the collective bargaining agreement to be substantially undermined, destroy the employer's confidence in the union's authority, and return the individual grievant to the vagaries of independent and unsystematic negotiation. *Vaca*, 386 U.S. at 191, 17 L. Ed. 2d at 858, 87 S. Ct. at 917.

The Illinois Public Labor Relations Act states in section 6(d):

> "Labor organizations recognized by a public employer as the exclusive representative or so designated in accordance with the provisions of this Act are responsible for representing the interests

of all public employees in the unit. *Nothing herein shall be construed to limit an exclusive representative's right to exercise its discretion to refuse to process grievances of employees that are unmeritorious.*" (Emphasis added.) 5 ILCS 315/6(d) (West 1996).

We believe the reasoning in *Vaca* must be applied here. That is, plaintiffs need not exhaust their remedies if they claim and prove that the union has breached its duty of fair representation.

These plaintiffs, however, never have alleged or attempted to prove that the Union was derelict in its duty of fair representation by failing to pursue arbitration of their grievances. For this reason, we believe that plaintiffs do not have standing to bring suit and dismissal was proper.

The same determination—that an individual union member lacks the necessary standing to bring suit against his employer unless the union member alleges and proves that the "Union's conduct in processing the grievance was arbitrary, discriminatory, or in bad faith"—recently was reached by this court in *Stahulak v. City of Chicago*, 291 Ill. App. 3d 824 (1997). *Stahulak* holds that under both the Illinois Public Labor Relations Act and the collective bargaining agreement the Union has the sole power to invoke the higher stages of the grievance process, including arbitration. Any process that ignores the union's authority in these matters undermines the entire collective bargaining system. The contract negotiated between the Union and the City rests at the heart of this controversy. The contract defines the firefighters' rights.

Strictly speaking, the plaintiffs are correct when they say they are not attacking their Union's resolution of a grievance in this lawsuit. But they end up in the same place. They are seeking judicial review of a purported breach of the collective bargaining agreement. The Union did not seek arbitration. The failure to allege the Union breached its duty of fair representation is no minor defect or trifling oversight that can easily be corrected. It is a matter of substance, grounded deeply in principles of collective bargaining.

We decline the plaintiffs' offer to return to the trial court with an amended complaint that would attempt to satisfy their current lack of standing. There is too much history here for the plaintiffs to now say, for the first time, their Union's behavior has been arbitrary, discriminatory, and in bad faith.

In fact, the Union has arbitrated almost identical issues for other officers of the Chicago fire department. In May 1988, the Union and the City were parties to an arbitration decision issued by Edwin H. Benn (the Benn decision). In that case, concerning captains and engineers, arbitrator Benn followed a prior decision by an arbitrator named Goldstein.

Benn held: (1) the City had the right to promote out of rank order, but only upon reasonable grounds; (2) achievement of affirmative action goals is reasonable; and (3) the City had a "clear and relatively heavy burden" to produce reasonable and understandable evidence of why it deviated from its custom of promoting in rank order. Benn decided it was permissible for the City to lower the passing score on the promotional exams to expand the eligibility lists to meet affirmative action requirements. Candidates who remained on the 1979 list did not have to be promoted before the list could be retired and new eligibility lists used. The contentions made by the Union at these arbitration hearings are at the core of the plaintiffs' claims in this case.

During oral argument, the City told us it was not relying on collateral estoppel in this case, apparently because it felt these plaintiffs were not parties to the earlier arbitration proceedings. The trial judge did rely on collateral estoppel when she ruled against Mahoney. Because we find none of the plaintiffs has standing to pursue this action, we will not stop to determine whether collateral estoppel applies to Mahoney's claim. We are empowered to affirm a summary judgment whenever the record supports the decision of the trial court. *Messenger v. Edgar*, 157 Ill. 2d 162, 177, 623 N.E.2d 310 (1993). We do note, however, the Union was acting on behalf of the rights of its members when it entered the Benn and Goldstein arbitration proceedings.

Plaintiffs allege that out-of-rank promotions violated their due process rights, breached personnel rules, and breached the implied contract that the personnel rules created. However, as members of the Union, any "property interest" in a promotion must necessarily be defined by the collective bargaining agreement. Thus, plaintiffs' due process rights with respect to promotions are governed by the collective bargaining agreement.

Furthermore, the Illinois Public Labor Relations Act states in section 15(a):

"In case of any conflict between the provisions of this Act and any other law, executive order or administrative regulation relating to wages, hours and conditions of employment and employment relations, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control." 5 ILCS 315/15(a) (West 1996).

Thus, the collective bargaining agreement preempts the personnel rules to the extent that they conflict with the collective bargaining agreement.

In the arbitration cases, arbitrators Benn and Goldstein deter-

mined the City's deviation from the custom of rank order promotions and promotion of minority candidates with lower or "non-passing" scores was done in compliance with the requirements of the Albrecht consent decree, as incorporated by the collective bargaining agreement. They also found that the City's compliance with the affirmative action provisions within the collective bargaining agreement constituted "reasonable grounds" for abandoning the customary practice of rank order promotions. Collateral estoppel or not, we cannot ignore these findings by the arbitrators. The Union fought for the position urged by these plaintiffs and lost. No useful purpose would be served by allowing the issue of fair representation to be raised now for the first time in the history of this lawsuit.

Because we find the plaintiffs lack standing, we see no need to decide the City's claim that *laches* bars this lawsuit.

*Laches* is "the neglect or omission to assert a right which, taken in conjunction with a lapse of time and circumstances causing prejudice to the opposite party, will operate as a bar to a suit." *Lee v. City of Decatur*, 256 Ill. App. 3d 192, 195, 627 N.E.2d 1256 (1994).

Why the court in *Lee* applied *laches* does concern us here and provides another reason we decline to remand this case to the trial court. The *Lee* court observed that "prejudice is inherent in civil service cases" because a detriment and inconvenience to the public will result if a plaintiff is allowed to pursue his claim and is successful. *Lee*, 256 Ill. App. 3d at 197. That is, if a plaintiff requesting back pay and benefits (as the plaintiffs do here) is allowed to unreasonably delay in bringing suit, the public will be required to pay for duplicate services for a substantial period of time. The longer the delay the greater the burden on employer and public. Here, for example, promotion lists have come and gone.

We do not wish to trivialize the long years of dedicated and courageous public service these plaintiffs have given the citizens of Chicago. In this case, however, they do not have a legal remedy.

## CONCLUSION

The plaintiffs do not have standing to pursue their claims. The trial court's grant of summary judgment in favor of the City is affirmed as to all plaintiffs.

Affirmed.

McNAMARA and CERDA, JJ., concur.