NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220773-U

NO. 4-22-0773

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 29, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| PEGGY MAAS, | ) | Appeal from the |
|         Plaintiff-Appellee, | ) | Circuit Court of |
|         v. | ) | Peoria County |
| BOARD OF EDUCATION OF PEORIA | ) | No. 18LM1700 |
| PUBLIC SCHOOL DISTRICT 150, | ) | |
|         Defendant-Appellant. | ) | Honorable |
| | ) | Paul E. Bauer, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice DeArmond and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's order granting summary judgment was not a final order. As a result, the appellate court lacks jurisdiction.

¶ 2        Plaintiff, Peggy Maas, filed a one-count complaint against defendant, the Board of Education of Peoria Public School District 150, seeking damages under the Illinois Wage Payment and Collection Act (Wage Act) (820 ILCS 115/1 *et seq.* (West 2018)). The parties filed cross-motions for summary judgment. The trial court granted plaintiff's motion and denied defendant's motion.

¶ 3        Defendant appeals, arguing the trial court erred in granting plaintiff's motion for summary judgment and denying its own motion for summary judgment. Specifically, defendant argues the court erred by ruling for plaintiff where: (1) plaintiff failed to follow defendant's "past

practice," (2) plaintiff's claim was barred by the doctrine of *laches*, and (3) the court lacked subject-matter jurisdiction. We dismiss the appeal for lack of appellate jurisdiction.

¶ 4                                 I. BACKGROUND

¶ 5        In June 2019, plaintiff filed an amended complaint against defendant seeking damages under the Wage Act. Specifically, plaintiff alleged defendant's refusal to reimburse her for insurance premiums she had personally paid following her retirement amounted to a breach of the parties' Collective Bargaining Agreement (CBA) and a violation of the Wage Act. See 820 ILCS 115/2, 8 (West 2018).

¶ 6        In May 2022, the parties filed cross-motions for summary judgment. Plaintiff attached to her motion for summary judgment, in relevant part, a transcript of her own deposition, a copy of the parties' CBA, a transcript of the deposition of Geralyn Hammer, defendant's Director of Employee Services, and a copy of a "CMS Enrollment Form."

¶ 7        Plaintiff testified she was employed by defendant as a teacher until her retirement on June 5, 2010. At the time of her retirement, plaintiff was a member of the Peoria Federation of Teachers Local #780 (the "Union"). Also at the time of plaintiff's retirement, defendant and the Union were bound by the CBA. Article IX, section J, of the CBA provides, in relevant part, as follows:

> "J. *Retirement Insurance Program*—Employees meeting the
> minimum requirements of age and creditable service in Illinois *** shall
> qualify for the Retirement Insurance Program.
>
>                                 * * *
>
> Except as noted below, retirees may not participate in
> [defendant's] plan, but may enroll in the Teachers' Retirement Health Plan

(TRIP). For those employees enrolled in TRIP, [defendant] will pay toward insurance coverage the lesser of the amount paid on behalf of active employees or the actual amount of the TRIP individual premium.

* * *

*** [Defendant's] obligation hereunder shall continue until the retiree is Medicare eligible."

According to plaintiff, she enrolled in TRIP effective July 1, 2010. However, between her retirement and her sixty-fifth birthday in January of 2018, when she became eligible for Medicare, defendant made no payments toward her TRIP premiums. Plaintiff testified that in the fall of 2017, she discovered her premiums had been deducted from her pension check each month following her retirement. Plaintiff contacted Hammer to ask for reimbursement of the payments she had personally made. Hammer ultimately sent plaintiff a letter informing her defendant was under no obligation to reimburse her because she failed to properly complete the "CMS Enrollment Form." Upon receiving Hammer's letter informing her defendant would not reimburse her for the TRIP premiums, plaintiff reached out to several union representatives about possible next steps. The union representatives informed her they had never encountered a similar situation and they would be unable to file a grievance on her behalf because she was retired and no longer a member of the union.

¶ 8        Geralyn Hammer testified she was employed as defendant's Director of Employee Services. As part of her role as Director of Employee Services, Hammer oversees employee insurance and provides employees with information regarding their health insurance options, including enrollment in TRIP. Hammer explained that to enroll in TRIP, a retiree must complete the "CMS Enrollment Form" and sign section 7, which authorizes the Teachers' Retirement

System (TRS) to deduct the TRIP premiums from their monthly retirement annuity. Section 8, the final section of the form, provides, "If the school district is paying your portion of the monthly premium ***, the district representative must complete the appropriate information and sign the appropriate line. The district representative must also identify the district name and the TRS code." Hammer testified plaintiff contacted her in the fall of 2017 to ask why defendant had not been paying her TRIP premiums. After contacting a TRS representative, Hammer discovered plaintiff had neglected to have defendant sign section 8 of the form and send it to TRS. On November 13, 2017, Hammer sent a letter to plaintiff stating the following in relevant part:

> "After investigating the circumstances, we have determined that [defendant] is under no obligation to reimburse you for the premiums you paid since retirement. When you retired, you failed to notify [defendant] that you enrolled in TRIP; and further, you failed to authorize [TRS] to release information to [defendant] regarding your enrollment such that [defendant] could pay the premium."

¶ 9        As stated, plaintiff also attached a copy of her "CMS Enrollment Form" to her motion for summary judgment. The enrollment form shows plaintiff had completed the first seven of eight sections of the form. Section 7 reads, in relevant part, "My signature below confirms that I understand all the options selected and authorize the release of information to the health plan I select and the State of Illinois. This authorization will remain in effect until further written notice." Plaintiff signed and dated section 7 and sent the enrollment form to the TRS office. Plaintiff neglected to have defendant complete section 8 of the form.

¶ 10        In defendant's motion for summary judgement, it advanced the same arguments it now raises on appeal—*i.e.*, (1) plaintiff failed to follow defendant's established practice

- 4 -

pertaining to enrollment in TRIP; (2) plaintiff's claim was barred by the doctrine of *laches*; and (3) the trial court lacked subject-matter jurisdiction.

¶ 11     On July 26, 2022, the trial court conducted a hearing on the parties' cross-motions for summary judgment. Following the hearing, on July 29, 2022, the court entered a written order granting plaintiff's motion for summary judgment and denying defendant's motion. The court found: (1) it had subject-matter jurisdiction because plaintiff was a retiree and therefore not required to exhaust her remedies under the CBA; (2) defendant failed to establish *laches* because it was unable to prove any prejudice; and (3) defendant "provided no authority for its assertion that its 'established practices' would override the terms of the CBA nor did it prove any such practices in the relevant time period." The court awarded plaintiff $18,816.73, "plus monthly statutory damages, pre-judgment and post-judgment interest, costs, and reasonable attorney's fees, subject to 1% daily interest 36 days after entry of the final damages award." The court's order concluded as follows: "Plaintiff shall submit her costs and attorney's fees within 7 days. Both parties shall have 14 days to submit their position on which version of 820 ILCS 115/14(a) applies to this case. This cause is continued to Sept[ember] 1, 2022, to address the final damages award."

¶ 12     Defendant appealed from the trial court's July 29, 2022, written order.

¶ 13                                    II. ANALYSIS

¶ 14     On appeal, defendant argues the trial court erred in granting plaintiff's motion for summary judgment and denying its own motion for summary judgment. Specifically, defendant argues the court erred by ruling for plaintiff where: (1) plaintiff failed to follow defendant's "past practice" regarding the enrollment process for TRIP; (2) plaintiff's claim was barred by the doctrine of *laches*; and (3) the court lacked subject-matter jurisdiction. "When parties file cross-

motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. "Where a case is decided through summary judgment, our review is *de novo*." *Id.* ¶ 30.

¶ 15 As an initial matter, we must address two potential jurisdictional hurdles, either of which would prevent us from reaching the merits of this appeal, as we have an independent duty to ensure appellate jurisdiction is proper. See, *e.g.*, *People v. Aldama*, 366 Ill. App. 3d 724, 725 (2006) ("[W]e have an independent duty to insure that jurisdiction is proper and thus will consider issues of jurisdiction regardless of whether either party has raised them."). First, we must address defendant's argument that the trial court lacked subject-matter jurisdiction. See, *e.g.*, *Soltysik v. Parsec, Inc.*, 2022 IL App (2d) 200563, ¶ 21 ("While appellate courts have jurisdiction to hear appeals from judgments entered by trial courts lacking jurisdiction, appellate courts are limited in those instances to the issue of jurisdiction and have 'no authority to address the substantive merits of [the] judgment.' " (quoting *People v. Bailey*, 2014 IL 115459, ¶ 29)). Next, if we determine the trial court did in fact possess subject-matter jurisdiction, we must also determine whether defendant appealed from a final order, thereby extending appellate jurisdiction to this court. See, *e.g.*, *Eychaner v. Gross*, 321 Ill. App. 3d 759, 781 (2001) ("Appellate jurisdiction is limited to review of final judgments unless an order falls within a statutory or supreme court exception."), *rev'd on other grounds*, 202 Ill. 2d 228 (2002). We note the parties in their briefs have addressed the issue of the trial court's subject-matter jurisdiction, but they have not discussed whether the court's order granting summary judgment was final and appealable.

¶ 16 Beginning with defendant's argument the trial court was without subject-matter jurisdiction, it contends the court erred in finding it had jurisdiction because plaintiff's claim

related to the CBA and the Illinois Educational Labor Relations Board (IELRB) had exclusive jurisdiction to rule on matters pertaining to the CBA. According to defendant, "an employee claiming a breach of the CBA must exhaust their administrative remedies under the CBA's grievance procedure *** and thereafter file an Unfair Labor Practice charge with the IELRB." Plaintiff disagrees, arguing the Illinois Educational Labor Relations Act (115 ILCS 5/1 (West 2018)) and the CBA's grievance procedure are inapplicable to her situation given her status as a retiree, not an employee. Whether a trial court has subject-matter jurisdiction is a question of law that we review *de novo*. See, *e.g.*, *Soltysik*, 2022 IL App (2d) 200563, ¶ 21.

¶ 17        The Educational Labor Relations Act was enacted "to promote orderly and constructive relationships between all educational employees and their employers." 115 ILCS 5/1 (West 2018). "It is the purpose of [the Educational Labor Relations Act] to regulate labor relations between educational employers and educational employees, including the designation of educational employee representatives, negotiation of wages, hours and other conditions of employment and resolution of disputes arising under collective bargaining agreements." *Id.* Section 10 of the Educational Labor Relations Act provides "[a]n educational employer and the exclusive representative have the authority and the duty to bargain collectively." *Id.* § 10(a). "The collective bargaining agreement negotiated between representatives of the educational employees and the educational employer shall contain a grievance resolution procedure which shall apply to all employees in the unit and shall provide for binding arbitration of disputes concerning the administration or interpretation of the agreement." *Id.* § 10(c). "An unfair labor practice charge may be filed with the [IELRB] by an employer, an employee organization, or an employee." 80 Ill. Adm. Code 1120.20(a) (2017). "Employee" is defined as "any individual *** employed full or part time by an educational employer." 115 ILCS 5/2(b) (West 2018).

¶ 18        Defendant relies on *Kostecki v. Dominick's Finer Foods, Inc. of Illinois*, 361 Ill. App. 3d 362 (2005), in support of its argument plaintiff was required to exhaust the CBA's grievance procedure before initiating the instant action in the trial court. In *Kostecki*, the plaintiff filed a complaint alleging the defendant, her former employer, violated the Minimum Wage Law (820 ILCS 105/1 *et seq.* (West 2002)) and the Wage Act by requiring employees to work "off the clock." *Kostecki*, 361 Ill. App. 3d at 365-66. The plaintiff was a member of a labor union and the terms of her employment were governed by a collective bargaining agreement. *Id.* at 365. The "agreement provide[d] for how grievances, including those involving wages, shall be filed, pursued, and arbitrated, if necessary." *Id.* The trial court granted the defendants' motion to dismiss, concluding, in part, "because [the plaintiff's] claims arose from the collective bargaining agreement, [the] plaintiff was required to exhaust the remedies provided under the agreement." *Id.* at 366. The *Kostecki* court agreed with the trial court and affirmed its judgment on appeal. The *Kostecki* court found the plaintiff's claims "ar[o]se from the collective bargaining agreement, as it sets forth specific rates of pay for overtime *** and provides for how overtime pay is to be calculated." *Id.* at 371. The court then noted that, "[w]here a collective bargaining agreement establishes a grievance and arbitration procedure for disputes arising out of the agreement, an *employee* alleging a violation of the agreement must attempt to exhaust his or her contractual remedies *before* seeking judicial relief." (Emphasis added.) *Id.* at 369. Moreover, "[t]o avoid seeking arbitration, the plaintiff must show that the union breached its duty of fair representation." *Id.* at 370. Thus, the *Kostecki* court held, "[b]ecause [the] plaintiff did not allege that the union breached its duty of fair representation, she was required to follow the grievance and arbitration provisions of the contract, which, through her Union, she agreed to be bound."

¶ 19          In *Carnock v. City of Decatur*, 253 Ill. App. 3d 892, 898 (1993), this court held because the plaintiff was retired, he was not required to exhaust the grievance procedures set forth in the parties' collective bargaining agreement before bringing suit in the trial court. In that case, the plaintiff, a retired firefighter previously employed by the defendant, the City of Decatur, brought an action "seeking to recover an underpayment for unused sick days he accumulated prior to retiring." *Id.* at 893. The trial court dismissed the plaintiff's action on the basis he had failed "to exhaust the grievance procedure provided in the collective-bargaining agreement prior to filing suit." *Id.* This court reversed the trial court's judgment on appeal. *Id.* at 899. In doing so, we began by noting that, "[a]s a general rule, employees claiming rights under a collective-bargaining agreement are required to exhaust remedies provided in the agreement before bringing suit against their employer in the [trial] court." *Id.* at 895. However, we explained that the general rule "is not absolute" and highlighted a "retiree" exception to the exhaustion requirement outlined by the Eighth Circuit Court of Appeals:

> "In *Anderson v. Alpha Portland Industries, Inc.* (8th Cir. 1985), 752 F.2d 1293, the court held retired employees were not required to exhaust contractual remedies prior to bringing an action against their employer to recover insurance benefits under the collective-bargaining agreement. The court reasoned retirees were outside the collective-bargaining relationship, and the union did not owe them any duty of fair representation because they were not employees in the bargaining unit. The court also found that the language of the collective-bargaining agreement could not be read as requiring exhaustion of grievance procedures by retirees. The relevant provisions addressed only

- 9 -

grievances of 'employees' and spoke only of 'employees' initiating contractual dispute resolution proceedings. *** Moreover, the court found the context of the grievance procedure which involved taking complaints to a foreman or plant manager was oriented toward active employees initiating disputes, not retirees who did not have a 'workplace.' " *Id.* at 896.

¶ 20    In *Carnock*, we relied on *Anderson* in holding the plaintiff, as a retiree, was not required to exhaust the grievance procedures in the collective bargaining agreement before bringing an action in the trial court. We noted that the collective bargaining agreement at issue "only require[d] disputes between the City and the Union or *an employee covered by the agreement* to be subject to the grievance procedure." (Emphasis in original.) *Id.* at 899. However, the "plaintiff no longer performed any services for the fire department, was not paid any wages and therefore was no longer a member of the bargaining unit represented by the Union or an employee of [the] defendant." *Id.* at 898. This court reasoned that "[b]ecause he was not covered by the agreement, he should not have to exhaust the grievance procedures." *Id.* at 899. We also based our holding on the fact that, under the terms of the agreement, while an individual employee could submit a grievance, "only the Union *** may advance the grievance to arbitration." *Id.* "As the Supreme Court in *Allied* [*Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.* (1971), 404 U.S. 157, 173,] made clear, however, a union has no obligation to represent retirees, who are outside the collective-bargaining unit. Without having union representation, it would seem fruitless to have them exhaust the grievance procedure." *Id.*

¶ 21        Here, it is undisputed plaintiff retired in 2010, after which she was no longer a member of the Union. It is also undisputed the instant action brought under the Wage Act arises from the terms of the CBA. The CBA's grievance procedure is set forth in article V of the agreement. It defines a "grievance" as "any difference arising between [defendant] and the Union or any member of the bargaining unit with respect to the interpretation or application of the Agreement." The first step of the grievance procedure provides "the grievant shall reduce the grievance to writing and present it to his/her immediate Principal/Supervisor." The third step provides that if the grievance has not been resolved at steps one or two, "upon request of the Union, the Superintendent or his designee and the Union shall select the arbitrator from the Labor Mediation Roster maintained by the [IELRB]."

¶ 22        We agree with plaintiff and find the facts in this case are closer to those in *Carnock* and distinguishable from those in *Kostecki*. Because plaintiff is retired, like the plaintiff in *Carnock* and unlike the plaintiff in *Kostecki*, she is no longer a member of the Union or an employee of defendant. *Id.* at 898. As a grievance may only arise between defendant "and the Union or any member of the bargaining unit," plaintiff's situation does not fall within the CBA's definition of a grievance. Even if the grievance procedure applied to plaintiff, as a practical matter, she would be unable to comply with it. For example, step one of the grievance procedure provides "the grievant shall reduce the grievance to writing and present it to his/her immediate Principal/Supervisor." As a retiree, plaintiff does not have a "principal" or "supervisor" to whom she could present a grievance. See *id.* at 896 ("[T]he [*Anderson*] court found the context of the grievance procedure which involved taking complaints to a foreman or plant manager was oriented toward active employees initiating disputes, not retirees who did not have a 'workplace.' "). Further, step three of the grievance procedure provides binding arbitration may

only be requested by the Union. Because plaintiff is no longer a member of the Union, the Union does not owe her a duty of fair representation (*id.*) and she is unable to seek arbitration on her own. Compare *Kostecki*, 361 Ill. App. 3d at 371 ("Because [the] plaintiff did not allege that the union breached its duty of fair representation, she was required to follow the grievance and arbitration provisions of the contract, which, through her Union, she agreed to be bound."). As was the case in *Carnock*, the Union had no obligation to represent retirees, and without union representation, "it would seem fruitless to have [plaintiff] exhaust the grievance procedure." *Carnock*, 253 Ill. App. 3d at 899. Accordingly, we conclude plaintiff was not required to exhaust the grievance procedure in the CBA and the trial court was correct in finding it had subject-matter jurisdiction.

¶ 23 Having found the trial court had subject-matter jurisdiction, we must next determine whether this court has jurisdiction to address the trial court's order granting summary judgment. "Appellate jurisdiction is limited to review of final judgments unless an order falls within a statutory or supreme court exception." *Eychaner v. Gross*, 321 Ill. App. 3d 759, 781 (2001) (*rev'd on other gr*ounds by *Eychaner v. Gross*, 202 Ill. 2d 228 (2002)). "A final judgment is one that fixes absolutely and finally the rights of the parties in the lawsuit on all issues of litigation and disposes of the entire controversy; it is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." *Id.* An order still requiring a damage determination cannot be executed and therefore is not final. *Id.* at 782; see also *Lindsey v. Chicago Park District*, 134 Ill. App. 3d 744, 747 (1985) (finding the trial court's order was not final and appealable because the "order constitute[d] a judgment only as to liability with the question of damages yet undetermined").

¶ 24        Here, the trial court's July 29, 2022, order granting summary judgment was not final and appealable. In the order, the court ruled in favor of plaintiff and against defendant "in the amount of $18,816.73, plus monthly statutory damages, pre-judgment and post-judgment interest, costs, and reasonable attorney's fees, subject to 1% daily interest 36 days after entry of the final damages award." The court then gave plaintiff 7 days to submit her costs and attorney fees and directed the parties to "submit their position on which version of 820 ILCS 115/14(a)" applied within 14 days. The court continued the matter to September 1, 2022, "to address the final damages award." We note that the parties subsequently filed their submissions relating to the amendment of section 14(a) of the Wage Act (P.A. 102-50, § 5, eff. July 9, 2021). The amendment had the effect of increasing the statutory damages available to a plaintiff from 2% of a defendant's underpayment to 5% of the underpayment. In her submission, plaintiff claimed she was entitled to statutory damages in the amount of 2% for each of the unpaid monthly premiums through July 9, 2021, the effective date of the amendment, and 5% of the unpaid monthly premiums thereafter. In its submission, defendant disagreed that plaintiff was entitled to the larger percentage provided by the statute's amendment. The matter of plaintiff's final damages remained unresolved at the time defendant filed the instant appeal.

¶ 25        Because the trial court did not determine plaintiff's final damages in its order granting summary judgment, the order cannot be considered a final judgment for appeal purposes. See *Lindsey*, 134 Ill. App. 3d at 747. Accordingly, since we are without jurisdiction, we must dismiss the instant appeal. See, *e.g.*, *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 9 ("[T]he appellate court is without jurisdiction to review judgments, orders or decrees which are not final.").

¶ 26                                III. CONCLUSION

¶ 27        For the reasons stated, we dismiss the appeal.

¶ 28        Appeal dismissed.