**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1928

PATRICK P. STAUDNER,

Plaintiff - Appellant,

v.

ROBINSON AVIATION, INC.; PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville. Terrence W. Boyle, Chief District Judge. (4:15-cv-00098-BO)

Argued: September 27, 2018                    Decided: December 7, 2018

Before DIAZ, THACKER, and HARRIS, Circuit Judges.

Reversed and remanded by published opinion. Judge Harris wrote the opinion, in which Judge Diaz and Judge Thacker joined.

Tracy Humphrey Stroud, COLOMBO, KITCHIN, DUNN, BALL & PORTER, LLP, Greenville, South Carolina, for Appellant. Lance Michael Geren, FREEDMAN & LORRY, PC, Philadelphia, Pennsylvania, for Appellee Professional Air Traffic Controllers Organization. Michael Coghlan Lord, WILLIAMS MULLEN, Raleigh, North Carolina, for Appellee Robinson Aviation, Inc.

PAMELA HARRIS, Circuit Judge:

Patrick Staudner brought suit under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), alleging that his union and his former employer breached the collective bargaining agreement that governed his employment. Specifically, he claims that his former employer wrongfully terminated him, and that his union breached its duty of fair representation in its handling of his resulting grievance.

The district court found that the collective bargaining agreement required Staudner to exhaust the agreement's grievance procedures before filing suit in federal court, and that Staudner had failed to do so. Interpreting this exhaustion requirement as a prerequisite to its jurisdiction over the case, the district court dismissed Staudner's action. We find that the district court erred in two respects: first, in treating exhaustion as a matter of jurisdiction; and second, in holding that this collective bargaining agreement in fact required exhaustion. Accordingly, we reverse.

## I.

### A.

Patrick Staudner worked for Robinson Aviation, Inc., as an air traffic controller for fourteen years. During that time, he regularly received successful performance reviews. According to Staudner, however, toward the end of his tenure, his relationship with his direct supervisor soured. Staudner contends that the resulting personal animosity caused Robinson Aviation to fire him in November 2014 – roughly a month after his latest successful performance review. Robinson Aviation justified Staudner's termination by

2

pointing to a number of minor breaches of airport policy: Staudner parked (partially) in the wrong spot, did not stop when entering the parking lot, and did not lock his car. Robinson Aviation also indicated that Staudner twice failed to lock the air traffic control tower following a shift, allegations that Staudner denies.

Under the collective bargaining agreement negotiated between Robinson Aviation and Staudner's union, the Professional Air Traffic Controllers Organization, Staudner may be terminated only "for just cause." J.A. 38. Because Staudner believes that his supervisor fired him for personal reasons, and that Robinson Aviation's stated reasons are pretextual, he argues that his termination violated the collective bargaining agreement. For support, Staudner points to his consistently positive performance reviews, as well as his supervisor's admission that he had never before disciplined an employee for failing to park in the correct spot or lock his car.

Staudner filed a grievance to appeal his termination under the four-step process set out by the collective bargaining agreement. As described by the agreement, the first three steps involve filing written grievances with Robinson Aviation officials of escalating authority, culminating with a decision from the chief executive officer or a designee. At step four, the grievance goes to arbitration.

Robinson Aviation denied Staudner's grievance at each of the first three steps of this process. Although the union offered some assistance with Staudner's claim in the earlier steps, when Staudner attempted to initiate the fourth and final step, the union informed him that it did not believe his case warranted arbitration. Staudner contacted the designated arbitration service on his own, and reached out to Robinson Aviation to begin

3

the arbitrator selection process – the first step of arbitration under the agreement. Robinson Aviation refused to participate, informing Staudner that only the union could force it to arbitrate. After the union gave Staudner express permission to proceed individually, Staudner attempted again to initiate arbitration. Again Robinson Aviation refused to arbitrate, and Staudner filed suit in federal court in the Eastern District of North Carolina.

**B.**

Staudner's complaint included claims against both Robinson Aviation and his union under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). He claimed that Robinson Aviation violated the collective bargaining agreement by firing him without just cause, and that the union breached its duty of fair representation by declining to take his grievance to arbitration.

In their answers, neither defendant asserted that Staudner failed to exhaust the collective bargaining agreement's grievance procedures. Instead, the union moved for summary judgment on the merits, contending that Staudner failed to raise a genuine dispute of material fact regarding his § 301(a) claims. The district court denied the union's motion. The court held that Staudner had introduced sufficient evidence to suggest that his wrongful discharge claim had merit, and that the union's pursuit of that claim was so minimal that a genuine dispute existed as to whether the union had breached its duty of fair representation by declining to arbitrate that claim.

At that point, the union raised the exhaustion issue in a motion to dismiss Staudner's action under Rule 12(b)(1). According to the union, the district court lacked subject matter

4

jurisdiction over the suit because Staudner had failed to exhaust his remedies under the collective bargaining agreement.

This time, the district court granted the union's motion. The court began by recognizing that the Supreme Court has established an exhaustion requirement under § 301(a), under which an "employer cannot be held liable for breach of a collective bargaining agreement unless it can be shown that the employee unsuccessfully sought relief through the union grievance procedure." *Staudner v. Robinson Aviation, Inc.*, 267 F. Supp. 3d 679, 682 (E.D.N.C. 2017) (quoting *Vaca v. Sipes*, 386 U.S. 171, 185 (1967)). That requirement, the court presumed, is jurisdictional: "In labor cases, it is proper for the Court to analyze a motion to dismiss for failure to meet the exhaustion requirement as one that challenges the subject matter jurisdiction of the Court." *Id.* at 683. Without identifying any provision of the agreement requiring exhaustion, the court concluded that Staudner failed to exhaust because he "voluntar[ily] ended the arbitration process before completion." *Id.* at 684.

Most of the district court's exhaustion analysis was devoted to two exceptions the Supreme Court has made to the exhaustion requirement in this context. Under the first, an employee may forego exhaustion where the union "breached its duty of fair representation in its handling of the employee's grievance." *Vaca v. Sipes*, 386 U.S. 171, 186 (1967). Under the second, an employee need not exhaust "when the conduct of the employer amounts to a repudiation of those contractual procedures." *Id.* at 185. The district court considered each exception and determined that Staudner qualified for neither.

First, the district court rejected Staudner's argument that the union's refusal to take his claim to arbitration amounted to a breach of its duty of fair representation, excepting him from the need to exhaust. As the district court read the collective bargaining agreement, Staudner was permitted to arbitrate his grievance even without the union's participation. It followed, the court reasoned, that Staudner could not invoke the exception for union breach of duty, because any breach by his union did not have the effect of preventing him from arbitrating his claim and thus exhausting the agreement's grievance procedures. *See Groves v. Commc'n Workers of Am.*, 815 F.3d 177, 182 (4th Cir. 2016) (exception for union breach applies only when there is "some causal nexus between a union's breach of its duty of fair representation and an employee's failure to exhaust contractual remedies").

The court then turned to the second exception, for cases in which an employer repudiates contractual grievance procedures. According to the district court, Robinson Aviation's repeated refusals to arbitrate with Staudner without his union's participation did not amount to a "repudiation" for purposes of this exception. Although the court had ruled that Staudner in fact could arbitrate without his union, it found that Robinson Aviation nevertheless "was acting on what it *perceived* to be its right to decline [Staudner's] invitation to arbitrate," rather than repudiating the agreement's grievance procedures. *Staudner*, 267 F. Supp. 3d at 685 (emphasis added).

Having concluded that Staudner failed to exhaust, and that no exception to the exhaustion requirement applied, the district court granted the union's motion to dismiss for

6

lack of subject matter jurisdiction.[1]  This appeal followed.

## II.

## A.

We turn first to the district court's assumption that the exhaustion requirement at issue here is jurisdictional.  This assumption carries significant consequences.  "Branding a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).  Although "courts are generally limited to addressing the claims and arguments advanced by the parties[,] . . . [they] have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Id.* (citation omitted).

Recognizing "the consequences that attach to the jurisdictional label," the Supreme Court has "tried in recent cases to bring some discipline to the use of this term." *Id.* at 435.  This case requires that we clarify "the distinction between two sometimes confused or conflated concepts:  federal-court 'subject-matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief." *Arbaugh v. Y & H Corp.*, 546 U.S. 500,

---

[1] Before the district court, Robinson Aviation filed a separate motion to dismiss for lack of subject matter jurisdiction, arguing that Staudner's claim was moot.  According to Robinson Aviation, it already had offered to settle that claim for an amount, it alleged, that represented the full amount of damages owed, so that there no longer was a live controversy between the parties.  Because the district court granted the union's motion to dismiss, it declined to address Robinson Aviation's motion.  In light of our decision today, that motion remains to be addressed by the district court on remand.

503 (2006). The specific question is whether the judicially mandated exhaustion requirement is a jurisdictional prerequisite to filing suit under § 301(a) or a nonjurisdictional precondition to suit. We conclude that it is the latter.

Section 301(a) confers federal jurisdiction over claims, like Staudner's, that allege violations of collective bargaining agreements. *See Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am.*, 523 U.S. 653, 654–57 (1998). We thus begin with the "starting presumption that when jurisdiction is conferred, a court may not decline to exercise it." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 71 (2009). Congress can rebut this presumption if it "clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." *Arbaugh*, 546 U.S. at 515–16. But "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional." *Id.* at 516.

One result of this rule is that "[a] statutory condition that requires a party to take some action before filing a lawsuit is not automatically 'a *jurisdictional* prerequisite to suit.'" *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Indeed, as the Supreme Court explained in *Reed*, it has "treated as nonjurisdictional" other pre-filing exhaustion requirements. *Id.* at 166 & n.6 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

Here, of course, Congress has not "clearly stated" that § 301(a)'s exhaustion requirement goes to a court's subject matter jurisdiction. In fact, Congress has said nothing at all about this exhaustion requirement, because the Supreme Court, not Congress, created

8

it. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53 (1965). This alone is enough to establish that exhaustion is not jurisdictional in this instance. Basic separation-of-powers principles dictate that "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) (citing U.S. Const. art. III, § 1). And what Congress has provided for in § 301(a) is broad federal jurisdiction over claims for violations of collective bargaining agreements, without any mention of an exhaustion requirement, jurisdictional or otherwise. *See* 29 U.S.C. § 185(a) (conferring jurisdiction over suits for violations of collective bargaining agreements "without respect to the amount in controversy" or "the citizenship of the parties"); *cf. Arbaugh*, 546 U.S. at 505–06 (Congress intended to enlarge federal courts' jurisdiction by eliminating any amount-in-controversy requirement in Title VII cases).

The Supreme Court's own treatment of the exhaustion requirement confirms that it is nonjurisdictional in nature. First, as the district court recognized in this case, the Supreme Court has carved out multiple exceptions to its exhaustion requirement. *See Vaca*, 386 U.S. at 185–86; *see also Glover v. St. Louis-S.F. Ry. Co.*, 393 U.S. 324, 330 (1969) (identifying a third exception "where the effort to proceed formally with contractual or administrative remedies would be wholly futile"). Those exceptions, designed to avoid the "great injustice" that would result if a union or employer's wrongful conduct prevented an employee from exhausting and then left him "remediless," *Vaca*, 386 U.S. at 185–86, clearly rest on equitable grounds. But the Court has "no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). Because a court may not excuse a lack of jurisdiction on equitable grounds, *see Arbaugh*,

9

546 U.S. at 514, it follows that the exceptions to § 301(a) exhaustion are exceptions to a *nonjurisdictional* rule.

Moreover, the Supreme Court has described exhaustion under § 301(a) – not in jurisdictional terms – but in prudential ones, as a rule crafted by the Court to advance Congress's preference for private resolution of labor disputes. It is "federal labor policy," the Court has explained, that "requires [] individual employees wishing to assert contract grievances" at least to "*attempt* use" of contractual grievance processes. *Maddox*, 379 U.S. at 652 (emphasis in original). Because contract grievance procedures are "a preferred method for settling disputes and stabilizing the 'common law' of the plant," *id.* at 653, exhaustion will be required – but only where, as discussed above, the benefits for labor stability are not outweighed by countervailing employee equities, *see Vaca*, 386 U.S. at 184–87. Even if the Supreme Court could expand or contract federal court jurisdiction, in other words, it has not purported to do so here.

Accordingly, we conclude that the exhaustion requirement under § 301(a) is a nonjurisdictional precondition to suit rather than a jurisdictional limit.[2] We need not decide in this case the precise form that requirement takes – whether, that is, exhaustion is an element of an employee's cause of action or an employer's affirmative defense. *Compare*

---

[2] We recognize that our holding conflicts with a recent decision of the Fifth Circuit describing the exhaustion requirement as jurisdictional. *See Nat'l Football League Players Ass'n v. Nat'l Football League*, 874 F.3d 222, 226–27 (2017) (per curiam). For the reasons stated above, however, we cannot agree that the Supreme Court has "treated the exhaustion of grievance procedures provided for in collective bargaining agreements as jurisdictional," *id.* at 227. Instead, the Supreme Court's cases make exhaustion "a prudential consideration and not a strict jurisdictional prerequisite." *Id.* at 232 (Graves, J., dissenting).

*Youseff v. Ford Motor Co.*, 225 F.3d 660, at \*3 n.3 (6th Cir. 2000) (unpublished table decision) ("This court has apparently treated motions to dismiss for failure to exhaust remedies in § 301 cases as Rule 12(b)(6) motions."), *with Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 n.2 (2d Cir. 1988) ("Failure to exhaust union grievance procedures is an affirmative defense."). Sometimes this is important, because a defendant's failure to plead an affirmative defense waives that issue for the remainder of the litigation, *see* Fed. R. Civ. P. 8(c)(1), whereas a defendant retains through trial the right to file a motion for failure to state a claim, *see* Fed. R. Civ. P. 12(h)(2). In this case, however, it makes no difference: Even if exhaustion were an element of Staudner's claim, so that the defendants were entitled to raise failure to exhaust late in the proceedings, the defendants cannot prevail on their exhaustion argument for the reasons we turn to now.

## B.

The district court, as described above, focused its exhaustion analysis on the exceptions to the exhaustion requirement. But before we reach the matter of exceptions, we must determine whether this agreement requires exhaustion at all. As the Supreme Court has explained, the exhaustion requirement is not a freestanding rule of law, but rather a matter of contract enforcement, holding parties to their agreement to make a contractual grievance process the "exclusive remedy" for breaches of that contract. *Vaca*, 386 U.S. at 184. So the threshold question is whether the parties here in fact have agreed to a mandatory and exclusive grievance process.

We conclude that they have not.[3]  This agreement's plain language does not make its grievance procedures exclusive.  Instead, Article 19, Section 4 of the agreement – entitled "Dispute Resolution" – provides to the contrary, and expressly so:  "An employee shall have the option of utilizing the unfair labor practice procedures as provided by law *or* other such avenues as provided by law *or the grievance/ arbitration procedures contained in this Article*."  J.A. 48 (emphases added).  Staudner contends that this language makes the agreement's grievance procedures optional, not mandatory, and we agree.  By plain terms, it is up to the employee to choose the forum in which to resolve a dispute – and those choices include "other such avenues as provided by law," *id.*, a formulation broad enough to encompass Staudner's current § 301(a) action.  And consistent with the clear import of Section 4, the agreement throughout uses only permissive, not mandatory, language to describe an employee's grievance-procedure options.  *See, e.g.*, J.A. 49 ("[A]n employee who *chooses to use* this grievance procedure shall indicate . . . whether or not the employee shall be represented by the Union." (emphasis added)); J.A. 50 ("Within seven (7) days of an event giving rise to a grievance . . . , an employee *may submit* a written grievance." (emphasis added)).

The defendants do not dispute this plain reading of their agreement.  They do, however, suggest that even if the agreement does not require that all employees use the grievance procedures, it does require that an employee who initiates a grievance (as

_____

[3] In light of our holding that the agreement does not require exhaustion, we have no occasion to reach the parties' arguments regarding application of exceptions to the exhaustion requirement.

12

Staudner did here) take that grievance all the way through arbitration. But again, the clear terms of the agreement are to the contrary. At each step of the grievance process, the agreement gives employees the *option* of escalating to the next; there is no *requirement* that they do so. *See* J.A. 50 (providing that employee dissatisfied with determination at step one or two "may appeal"). And arbitration is no exception: "If dissatisfied with the decision [at step three], the employee *may* present the grievance . . . for arbitration." J.A. 51 (emphasis added). Nothing in this agreement commits employees – even those who have initiated the grievance process – to mandatory arbitration.[4]

We note that even if the agreement did put employees to the all-or-nothing choice envisioned by defendants – allowing employees either to forgo the grievance process altogether or to complete all its steps – it is not clear that it would establish a single "exclusive remedy" for purposes of the Supreme Court's exhaustion doctrine. *See Vaca*, 386 U.S. at 184. A central concern of the exhaustion doctrine is that when parties have agreed to make grievance procedures the exclusive means for settling their disputes, they should not be permitted to circumvent that agreement by going to court instead. *See Maddox*, 379 U.S. at 652–53; *Vaca*, 386 U.S. at 184. But an agreement under which

_____

[4] The agreement expressly accounts for cases in which an employee exercises his or her choice to start and then stop the grievance procedure, providing that the internal process will be treated as complete at the last step to which the employee escalates: "If an employee initiates a grievance procedure and fails to appeal a decision to a higher level, the decision rendered prior to failure to appeal shall be final and binding." J.A. 49. Whether and how a "failure to appeal" under this provision – or any other alleged failure to comply with the agreement's internal procedures – would affect an employee's ultimate right to recover in a contract action is a separate question that we do not address. The only issue before us is whether this agreement makes exhaustion mandatory, and we conclude that it does not.

13

employees may choose as an initial matter to bring their claims directly to court has not made the internal grievance procedure an "exclusive remedy," and does not implicate that concern.

That brings us to defendants' more fundamental argument: that federal law requires Staudner to exhaust even if the agreement does not. That argument misconceives the nature of the exhaustion requirement, which is grounded in contract principles and, as noted above, applies only when "the bargaining agreement contains grievance and arbitration provisions which are intended to provide the exclusive remedy for breach of contract claims." *Vaca*, 386 U.S. at 184. From the exhaustion requirement's inception, the Supreme Court has recognized that "[i]f a grievance and arbitration procedure is included in the contract, but the parties do not intend it to be an exclusive remedy, then a suit for breach of contract will normally be heard even though such procedures have not been exhausted." *Id.* at 184 n.9 (citing *Maddox*, 379 U.S. at 657–58). Based on this agreement's language, it is evident that the parties did not intend its grievance procedures to be an employee's "exclusive remedy," and so exhaustion is not required.

## III.

We hold that the Supreme Court's § 301(a) exhaustion requirement is not jurisdictional, and that the agreement at issue in this case does not require exhaustion. Accordingly, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

14