2022 IL App (2d) 200563
No. 2-20-0563
Opinion filed July 27, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ROBERT SOLTYSIK and VESMO HANKS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 19-L-136 |
| | ) | |
| PARSEC, INC., | ) | Honorable |
| | ) | Dorothy French Mallen and |
| | ) | Bryan S. Chapman, |
| Defendant-Appellee. | ) | Judges, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Presiding Justice Bridges and Justice McLaren concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, Robert Soltysik and Vesmo Hanks, appeal from the dismissal, for lack of subject-matter jurisdiction, of their putative class action suit against defendant, Parsec, Inc., which brought claims based on the Biometric Information Privacy Act (Privacy Act) (740 ILCS 14/1 *et seq.* (West 2018)). They assert that (1) the trial court erred in concluding that it lacked subject-matter jurisdiction, (2) defendant "waived its right to compel arbitration of this case" per arbitration clauses in the collective bargaining agreements (CBAs), and (3) defendant "waived" its defense that section 301 of the Labor Management Relations Act of 1947 (LMRA) (29 U.S.C. § 185 (2018)) preempted plaintiffs' claims. On appeal (as below), plaintiffs do not contest that,

waiver aside, preemption was potentially a complete defense. We conclude that, although plaintiffs are correct that the trial court had subject-matter jurisdiction, they are incorrect that defendant waived either its right to compel arbitration under the CBAs or its defense of preemption under section 301. We uphold the dismissal based on plaintiffs' concession of preemption. We therefore affirm.

¶ 2                                I. BACKGROUND

¶ 3      On February 4, 2019, Soltysik filed a complaint in the circuit court of Du Page County, alleging that defendant, his former employer, had violated his rights, and the rights of a putative class of others similarly situated, under the Privacy Act. The core of Soltysik's claim was that defendant violated the Privacy Act's protections by requiring its employees to use fingerprint scanners to clock in and out. The court allowed Soltysik to amend his complaint to add Hanks. The amended complaint sought damages and an injunction.

¶ 4      On July 3, 2019, defendant filed a motion to dismiss, asserting that plaintiffs' claims (1) were precluded by the Workers' Compensation Act (Compensation Act) (820 ILCS 305/1 *et seq.* (West 2018)) as based on work-related injuries, (2) were time-barred, and (3) did not adequately plead damages. The court denied the motion on October 17, 2019. (We note that our supreme court, in *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, ¶ 50, has held that the Compensation Act does not preclude employees from suing their employers for injuries compensable under the Privacy Act.)

¶ 5      On January 22, 2020, defendant filed, under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)), a "Motion to Dismiss Plaintiffs' Amended Class Action Complaint for Lack of Subject Matter Jurisdiction or, in the Alternative, Because Plaintiffs' Claims Are Preempted." Defendant advanced two bases for dismissal.

¶ 6    First, defendant argued that the trial court "lack[ed] subject matter jurisdiction to adjudicate Plaintiffs' claims because they require[d] interpretation of the relevant [CBA] and, thus, are preempted under [section 301 of the LMRA]." On this point, defendant relied on *Miller v. Southwest Airlines Co.*, 926 F.3d 898 (7th Cir. 2019), a decision analyzing the Privacy Act's interaction with federal labor law. (Though *Miller* involved the Railway Labor Act (RLA) (45 U.S.C. §§ 151-188 (2006)), which applies to air carriers and railroads, defendant contended that *Miller* was relevant because it recognized that nearly identical preemption standards apply to the RLA and the LMRA. See *Miller*, 926 F.3d at 904.) In simple terms, *Miller* held that Privacy Act claims are preempted by the RLA when the claims regulate how workers clock in and out and the workforce is covered by a CBA. *Miller*, 926 F.3d 903-04. Defendant asserted that plaintiffs had been employed under different CBAs but that both included arbitration clauses. Defendant included copies of those CBAs. Defendant further asserted, "Illinois Appellate Courts have held that Section 301 of the LMRA grants *exclusive jurisdiction* to federal district courts over disputes involving [CBAs]." (Emphasis in original.) However, despite this strong statement, defendant also suggested that the LMRA has a more limited effect on a trial court's subject-matter jurisdiction: that under *Miller*, a trial court lacks subject-matter jurisdiction to address claims preempted by the LMRA when the parties have failed to exhaust the grievance or arbitration provisions of the applicable CBA.

¶ 7    Second, defendant argued that, even if the court had subject-matter jurisdiction, it should dismiss the claims as preempted. Moreover, it argued that plaintiffs could not reframe their claims as brought under section 301 of the LMRA, because they did not exhaust the applicable grievance and arbitration procedures in the CBAs and the LMRA requires such exhaustion before a party files suit under section 301.

¶ 8 Plaintiffs responded that defendant improperly framed the issue as one of subject-matter jurisdiction. According to plaintiffs, the trial court had subject-matter jurisdiction under section 20 of the Privacy Act, which states: "Any person aggrieved by a violation of [the Privacy Act] shall have a right of action in a State circuit court ***." 740 ILCS 14/20 (West 2018). The true question, plaintiffs asserted, was "whether the claims must go through a grievance/arbitration process pursuant to preemption principals [*sic*]." On that question, plaintiffs argued that (1) their claims did not arise out of the CBAs and thus were not subject to arbitration and (2) "[d]efendant already submitted multiple substantive issues for consideration[, and] therefore, it waived any right that may have existed to compel arbitration." (However, plaintiffs did not deny that they were employed under the CBAs indicated by defendant or that those CBAs had arbitration clauses.)

¶ 9 In reply, defendant argued that plaintiffs had failed to address *Miller*'s implications. Defendant cited two unpublished federal district court decisions that it claimed followed *Miller* in holding that a case must be dismissed for lack of subject-matter jurisdiction when the LMRA's exhaustion-of-arbitration requirement is unmet. Defendant interpreted plaintiffs' waiver argument as presuming that a party can waive its right to contest subject-matter jurisdiction—a position defendant contended was contrary to Illinois law. Defendant continued to maintain that, because the resolution of plaintiff's Privacy Act claims required interpretation of the CBAs, section 301 preempted those claims, "thus depriving the Court of jurisdiction."

¶ 10 The court granted defendant's motion to dismiss. Relying on *Miller* and the unpublished federal district court decisions cited by defendant, the trial court concluded that, because plaintiffs' claims required interpretation of the CBAs, the court lacked subject-matter jurisdiction:

"[O]nce \*\*\* [an] interpretation [of a CBA] is required, then Section 301 of the LMRA controls and divests the State court of subject matter jurisdiction to determine whether or not such a consent \*\*\* to the provisions of [the Privacy Act] has been made."

¶ 11 Plaintiffs moved for "partial" reconsideration of the dismissal. They conceded, "[f]or purposes of [the] Motion[,] \*\*\* that Section 301 preempts a claim under [the Privacy Act]." However, they asserted that a preemption defense can be waived in some circumstances. Relying principally on *Sweeney v. Westvaco Co.*, 926 F.2d 29, 40 (1st Cir. 1991), they argued that, although objections to *subject-matter jurisdiction* cannot be waived, a preemption defense based on the failure to arbitrate *can* be waived. Plaintiffs claimed that "courts around the country have found that Section 301 preemption defenses that seek to compel arbitration of union grievances are fully waivable."

¶ 12 In response, defendant argued that the issues of preemption and subject-matter jurisdiction were inseparable. Thus, by conceding that their claims were preempted, plaintiffs necessarily conceded that the trial court lacked subject-matter jurisdiction.

¶ 13 The court denied plaintiffs' motion, ruling that, under federal case law, "a court lacks subject matter jurisdiction where a CBA has to be interpreted." Plaintiffs filed a timely notice of appeal.

¶ 14                                   II. ANALYSIS

¶ 15 On appeal, plaintiffs argue that the trial court was mistaken about section 301's effect on its subject-matter jurisdiction. Plaintiffs urge us to follow *Sweeney* and related federal precedent in holding that the right under the LMRA to compel arbitration is not a condition precedent for jurisdiction and thus *can* be waived or forfeited. Plaintiffs reason that, if the right to compel

arbitration is waivable, then arbitration cannot be a condition of subject-matter jurisdiction, which is *not* waivable or forfeitable under Illinois (or federal) law.

¶ 16     At the same time, plaintiffs are explicit that they "are *not* challenging the [trial court's] decision that the LMRA and [*Miller*] afforded to the [d]efendant the right to enforce the CBA and require arbitration of grievances." (Emphasis in original.) However, they argue that defendant necessarily "waived" (more precisely, forfeited) any preemption defense by not timely raising it. Finally, they argue that defendant waived its right to compel arbitration by submitting, in its motion to dismiss, a substantive matter for the court to decide.

¶ 17     In response, defendant asserts that plaintiffs have forfeited the issue of subject-matter jurisdiction by failing to present any argument challenging the trial court's jurisdictional finding. Defendant argues alternatively that the trial court correctly resolved the jurisdictional question, as "*every* case within the Seventh Circuit has held subsequent to *Miller* [that] [Privacy Act] claims of union employee plaintiffs are preempted by the LMRA, and [that] courts lack subject matter jurisdiction over those claims." (Emphasis in original.) Further, it argues that *Sweeney* is outdated and that we should instead take direction from *Miller*. Finally, it contends that, because it "never moved to compel the arbitration of [p]laintiffs' claims," it could not have waived arbitration. (Emphasis omitted.) Defendant appears to have abandoned its argument, raised in its motion to dismiss, that federal courts have exclusive jurisdiction of claims under the LMRA.

¶ 18     In reply, plaintiffs do not dispute that their claims are preempted by section 301 of the LMRA. Specifically, they concede that "*Miller* stands for the proposition that [d]efendant had the right under [the CBAs] to have this case decided in arbitration." (Emphasis omitted.) Thus, "[i]f the [d]efendant here had timely sought to have its case resolved through an arbitration process, then [p]laintiffs are conceding, for purposes of this appeal, that arbitration would have been the

appropriate forum." What plaintiffs contest is the trial court's conclusion that it lacked subject-matter jurisdiction. They claim that the trial court wrongly conflated subject-matter jurisdiction, which is nonwaivable, with a preemption defense, which *is* waivable. They assert that defendant waived its right to arbitration by raising, in its motion to dismiss, substantive issues for decision.

¶ 19     We start by addressing defendant's claim that plaintiffs have forfeited their argument on appeal. Defendant claims that plaintiffs have altogether failed to challenge the trial court's ruling on subject-matter jurisdiction, or at least have not properly developed an argument on the point. We disagree. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), provides that the argument section of the appellant's brief must contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." In their opening brief, plaintiffs cite multiple authorities and assert that the trial court conflated the issue of preemption under section 301 with the issue of subject-matter jurisdiction. We hold that plaintiffs have properly developed an argument that the trial court erred. We now move to the merits of the appeal.

¶ 20                           A. Subject-Matter Jurisdiction

¶ 21     We begin with the merits of the jurisdictional issue. Subject-matter jurisdiction is "the power *** to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). Whether a trial court has subject-matter jurisdiction is an issue of law, and our review of the trial court's ruling on the matter is thus *de novo*. *McCormick v. Robertson*, 2015 IL 118230, ¶ 18. We stress that we could not reach our substantive holdings by merely assuming *arguendo* that the trial court had subject-matter jurisdiction. While appellate courts have jurisdiction to hear appeals from judgments entered by trial courts lacking jurisdiction, appellate courts are limited in those

instances to the issue of jurisdiction and have "no authority to address the substantive merits of [the] judgment." *People v. Bailey*, 2014 IL 115459, ¶ 29. Thus, before reaching the merits, if at all, we must determine whether the trial court had jurisdiction.

¶ 22     We note that, although defendant would have us defer to the Seventh Circuit over other lower federal courts, no decision of a lower federal court controls our analysis. Rather, all decisions of the lower federal courts are merely persuasive; thus, the decisions of the Seventh Circuit deserve no greater deference than any other lower federal-court decisions.

¶ 23     When we address an issue of federal law, we typically resort first to the applicable statutory law (or rules) and United States Supreme Court precedent; " 'United States Supreme Court interpretation of federal law is clearly binding on [the Illinois Supreme Court]' "—and, by extension, on lower Illinois courts as well. *Ammons v. Canadian National Ry. Co.*, 2019 IL 124454, ¶ 18 (quoting *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 33). When neither federal statutes nor Supreme Court precedent resolves the issue, " 'the weight this court gives to federal circuit and district court interpretations of federal law depends on factors such as uniformity of law and the soundness of the decisions.' " *Ammons*, 2019 IL 124454, ¶ 18 (quoting *State Bank of Cherry*, 2013 IL 113836, ¶ 33). Where federal courts are unanimous in their interpretation of federal law, we give great weight to that interpretation but are not bound by it. *Ammons*, 2019 IL 124454, ¶ 18; see also *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 420 n.5 (2004) (Rarick, J., dissenting, joined by Kilbride, J.) ("The only federal court whose interpretation of federal law is controlling on state courts is the United States Supreme Court."). Where there is a split in federal authority, "we may elect to follow those decisions we believe are better reasoned." *Ammons*, 2019 IL 124454, ¶ 18. Again, contrary to defendant's implication, we are not bound to give the opinions of the Seventh Circuit greater weight than those of its sister circuits.

¶ 24 Further, decisions about federal-court jurisdiction are typically not applicable to state courts. Federal courts are courts of limited jurisdiction. See *Aldinger v. Howard*, 427 U.S. 1, 15 (1976). Article III, section 2, of the United States Constitution (U.S. Const., art. III, § 2) sets "the absolute limits on the federal courts' jurisdiction." *Ankenbrandt v. Richards*, 504 U.S. 689, 695 (1992). Further, "the jurisdiction of the federal courts is limited not only by the provisions of Art. III of the Constitution, but also by Acts of Congress." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 372 (1978).

¶ 25 In contrast to federal courts, state trial courts are courts of general jurisdiction. *Aldinger*, 427 U.S. at 15. Under applicable principles of federalism, state trial courts axiomatically "have inherent authority, and are thus presumptively competent[ ] to adjudicate claims arising under the laws of the United States." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). Nevertheless, Congress may, explicitly or implicitly, limit jurisdiction of specific federal issues to the federal courts. *Tafflin*, 493 U.S. at 459. A federal ousting of state-court jurisdiction can be found by implication when there is "a clear incompatibility between state-court jurisdiction and federal interests." (Internal quotation marks omitted.) *Tafflin*, 493 U.S. at 459-60.

¶ 26 At the outset, we note that this case poses three separate jurisdictional questions. The first is whether courts generally—or state courts in particular—lack subject-matter jurisdiction over claims preempted by section 301. The second is whether there is a jurisdictional doctrine associated with section 301 under which grievance and arbitration proceedings are treated as tribunals with nonwaivable exclusive jurisdiction to address section 301 matters in the first instance. The third, which turns out to be the second question in a different guise, is whether a judicially recognized requirement for the exhaustion of grievance and arbitration proceedings

required by a CBA. is a prerequisite for state trial court jurisdiction of a claim preempted by the LMRA and, thus, not subject to waiver or forfeiture.

¶ 27    We conclude that the answer to each of these jurisdictional questions is "no."

¶ 28    The question of whether either all courts or state courts specifically lack subject-matter jurisdiction over claims arising under section 301 is easily answered. The United States Supreme Court has long held that both federal and state courts have jurisdiction over section 301 claims. Most notably, in *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 505-06 (1962), the Supreme Court concluded that Congress, in granting jurisdiction of section 301 cases to the federal courts, did not divest the state courts of jurisdiction over such cases.

¶ 29    The second question, whether grievance and arbitration proceedings are treated as tribunals with nonwaivable exclusive jurisdiction, is the one the *Sweeney* court addressed. We first consider *Sweeney* because it is central to the parties' arguments. By doing so, we are diving into the deep end of the labor-law pool and will need to gloss over certain concepts to be considered later. However, by reviewing *Sweeney* first we can distinguish the two meanings of "preemption" that appear in labor law. This will help us avoid conflating the two concepts in our later discussion.

¶ 30    In *Sweeney*, the relevant issue was whether the defendants—the employer and supervisors of a deceased employee—had lost through forfeiture or waiver a defense that section 301(a) "pre-empt[ed]" plaintiff's state-law tort claim. *Sweeney*, 926 F.2d at 32. That claim arose out of "conduct arguably falling within the scope of a [CBA]." *Sweeney*, 926 F.2d at 32.

¶ 31    Here, distinguishing the two meanings of preemption becomes important. The first is "preemption" in the common sense of the word. "Preemption" generally refers to the choice-of-law principle under which federal law typically takes priority over state law. Article VI of the federal constitution provides that the laws of the United States "shall be the supreme Law of the

Land; *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Federal law preempts state law under the supremacy clause when (1) Congress passes a law with an express preemption provision, (2) a conflict occurs that makes simultaneous compliance with both federal and state regulations impossible, or (3) "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Hillman v. Maretta*, 569 U.S. 483, 490 (2013) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

¶ 32     When federal law "preempts" state law in this usual sense, the subject-matter jurisdiction of state courts is not affected. A strong presumption exists that state and federal courts have concurrent jurisdiction over a given case that arises under federal law. *E.g.*, *Haywood v. Drown*, 556 U.S. 729, 735 (2009). Indeed, state courts are not free to decline such jurisdiction: the general rule is that the "Supremacy Clause *binds* state courts of competent jurisdiction *** to adjudicate federal causes of action." (Emphasis added.) *Brackeen v. Haaland*, 994 F.3d 249, 416 (5th Cir. 2021) (*per curiam*).

¶ 33     The second kind of preemption is the so-called "*Garmon* preemption." See *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). "*Garmon* preemption," in its strict sense, is a doctrine applying to matters arising under sections 7 and 8 of the National Labor Relations Act (NLRA) (29 U.S.C. §§ 157-58 (2018)). In *Garmon*, the Supreme Court held that, by enacting sections 7 and 8 of the NLRA, Congress had not merely created " 'a substantive rule of law to be enforced by any tribunal.' " *Garmon*, 359 U.S. at 242 (quoting *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776*, 346 U.S. 485, 490 (1953)). Rather, given that a " 'multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law,' " it had vested in the National

Labor Relations Board (NLRB) the exclusive power to adjudicate cases under the two sections. *Garmon*, 359 U.S. at 242-43, 245 (quoting *Garner*, 346 U.S. at 490-91). Consequently, "neither state nor federal courts [generally] have jurisdiction over suits directly involving activity [that] is arguably subject to § 7 or § 8 of the [NLRA]." (Internal quotation marks omitted.) *Vaca v. Sipes*, 386 U.S. 171, 179 (1967). *Sweeney* discussed whether there is an "*analog*" of *Garmon* preemption under section 301, meaning that the section limits federal and state trial court jurisdiction. (Emphasis added and internal quotation marks omitted.) *Sweeney*, 926 F.2d at 38. Of course, section 301 cannot have an *equivalent* jurisdictional effect; as *Charles Dowd Box Co.* tells us, in contrast to the rule under sections 7 and 8 of the NLRA, state *and* federal courts have jurisdiction to hear section 301 claims. *Charles Dowd Box Co.*, 368 U.S. at 505-06. Thus, any effect of section 301 on subject-matter jurisdiction would necessarily be limited to requiring that cases be addressed under grievance and arbitration procedures *in the first instance*.

¶ 34   In *Sweeney*, the employer did not raise a preemption defense (in the choice-of-law sense) until after a jury had entered a verdict against it in the tort suit. *Sweeney*, 926 F.2d at 37. The federal magistrate nevertheless accepted that defense, and, setting aside the verdict, entered judgment for the defendants. *Sweeney*, 926 F.2d at 34. On appeal, the plaintiffs argued that the employer had waived the preemption defense by raising it too late. In response, the defendants contended *both* (1) that the tort claim was preempted by section 301 in the choice-of-law sense *and* (2) that preemption had occurred in a jurisdictional sense analogous to *Garmon* preemption, making waiver of the preemption *defense* impossible. *Sweeney*, 926 F.2d at 36, 38. In other words, the defendants argued that, if section 301 was the applicable law, then exhaustion of arbitration was a jurisdictional prerequisite for the trial court's jurisdiction. Thus, in the defendants' view, the

preemption defense could not be separated from what they claimed was the defense's jurisdictional result.

¶ 35    On the first point, the defendants argued that, to address the tort claim, the court would need to interpret the CBA and that, therefore, under the applicable choice-of-law preemption rule, the tort claim was preempted by section 301. The *Sweeney* court agreed. *Sweeney*, 926 F.2d at 36.

¶ 36    On the second point, the defendants contended that, " '[f]or purposes of § 301 *** pre-emption,' *** 'the exclusive grievance and arbitration process under the [CBA] is the analog to the exclusive jurisdiction of the NLRB for purposes of *Garmon* *** pre-emption.' " *Sweeney*, 926 F.2d at 38. Therefore, according to the defendants, the full preemptive effect of section 301, like that of the NLRA, is jurisdictional and is, thus, a matter that a party can raise at any time.

¶ 37    The *Sweeney* court disagreed that section 301 has a jurisdictional effect analogous to *Garmon* preemption. First, noting that preemption is a matter of congressional intent, it concluded that the rationale for *Garmon* preemption under sections 7 and 8 of the NLRA "does not apply in the case of § 301 of the LMRA—at least it does not apply in one critical, outcome-determining aspect." *Sweeney*, 926 F.2d at 39. The employer contended that the grievance and arbitration procedure specified in the applicable CBA was an alternative forum analogous to the NLRB. *Sweeney*, 926 F.2d at 39. The *Sweeney* court disagreed. Although the court recognized the special expertise of arbitrators, it found indications that Congress did not believe that that expertise was so important as to foreclose resort to *judicial* fora. *Sweeney*, 926 F.2d at 39.

> "We are fairly certain about this because the law quite clearly permits parties to opt out of arbitration-based dispute-resolving mechanisms, and to have courts decide those disputes instead. [Among other things,] the law does not require that [CBAs] provide for

grievance and arbitration procedures. [Citation.] Where the [CBA] does not do so, courts, not arbitrators, decide disputes arising under that agreement." *Sweeney*, 926 F.2d at 39.

¶ 38 Second, it found that "the weight of court of appeals authority tend[ed] to support [it] and seem[ed] contrary to [the defendant's] view"; for instance, a Ninth Circuit decision had "concluded that § 301 pre-emption *** was a matter of what *law* ought not to apply (namely, federal [CBA] law or state tort law) rather than of what *forum* ought (or ought not) to apply it." (Emphases in original.) *Sweeney*, 926 F.2d at 39 (citing *Johnson v. Armored Transportation of California, Inc.*, 813 F.2d 1041, 1043-44 (9th Cir. 1987)). The *Sweeney* court, therefore, concluded that section 301's general requirement that arbitration proceedings be exhausted is *not* properly treated as jurisdictional and, thus, *is* subject to a procedural bar. *Sweeney*, 926 F.2d at 39. Finally, that bar applied to the employer, primarily because it had waited until after the verdict to raise the failure to exhaust arbitration. *Sweeney*, 926 F.2d at 40-41.

¶ 39 As defendant effectively concedes, under the rule in *Sweeney*, the trial court had subject-matter jurisdiction over plaintiffs' Privacy Act action. To be sure, *Sweeney*'s view of section 301's jurisdictional effects is not accepted by every federal circuit court. The division among those other circuits is represented in two relatively recent cases: *National Football League Players Ass'n v. National Football League*, 874 F.3d 222 (5th Cir. 2017) (*NFLPA*), and *Staudner v. Robinson Aviation, Inc.*, 910 F.3d 141 (4th Cir. 2018): the holding in *NFLPA* generally supports defendant's position while *Staudner*'s holding is consistent with *Sweeney*'s. However, neither *NFLPA* nor *Staudner* frames the jurisdictional issue in terms of "preemption," as in *Sweeney*. Instead, both cases discuss whether exhaustion of CBA-required grievance and arbitration procedures is a prerequisite for a trial court to have jurisdiction of a section 301 case. This difference is not significant. In either framing, the question is whether, by enacting section 301, Congress intended

to limit the jurisdiction of trial courts to prevent them from deciding matters that, under a CBA, must be submitted to grievance and arbitration proceedings in the first instance. The exhaustion-of-arbitration framing avoids the need to repeatedly distinguish the different meanings of "preemption." The cases we now discuss use "preemption" in its choice-of-law sense unless *Garmon* preemption or an analog is specifically indicated.

¶ 40    Defendant relies on the 2019 decision in *Miller*. However, as we explain (*infra* ¶ 68), *Miller* sidestepped the issues of exhaustion-of-arbitration and subject-matter jurisdiction. Before discussing *NFLPA*, *Staudner*, and *Miller*, we flesh out the labor-law principles that we glossed over in our examination of *Sweeney*.

¶ 41    Section 301(a) (29 U.S.C. § 185(a)) provides that the federal district courts may hear "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations." However, as we have noted, state courts also have the authority to hear cases under section 301, as the Supreme Court has recognized. See, *e.g.*, *Charles Dowd Box Co.*, 368 U.S. at 505-06.

¶ 42    Notably, no part of section 301 contains the substantive law usually associated with the section. Section 301(b) (29 U.S.C. § 185(b)) provides:

"Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the

organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."

The Supreme Court has interpreted section 301 as authorizing the development of a federal common law of labor relations. In *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 456-57 (1957), the Supreme Court said:

> "We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. [Citation.] The [LMRA] expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem. [Citation.] Federal interpretation of the federal law will govern, not state law. [Citation.] But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. [Citation.] Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights."

The narrower holding of the case was that the district court had the power under section 301 to enforce a contract between an employer and a union to arbitrate grievances. See *Lincoln Mills*, 353 U.S. at 457-59.

¶ 43　In *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 23 (1983), the Supreme Court amplified *Lincoln Mills*' holding on the extent of section 301's preemption in the choice-of-law sense:

> "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301."

Under section 301, the preemption is such that "substantive principles of federal labor law must be paramount in the area covered by the statute" so that "issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy." *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962). "[I]n enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Lucas Flour Co.*, 369 U.S. at 104. In practice, the holdings of *Lincoln Mills* and its progeny mean that, when an employee is represented by a union, section 301 will typically preempt state law as to claims arising out of employment.

¶ 44 Throughout the history of section 301, one of the central "polic[ies] of our national labor laws" (*Lincoln Mills*, 353 U.S. at 456) recognized by the Supreme Court has been the encouragement of arbitration of labor disputes. In furtherance of that policy, the Supreme Court typically requires parties to exhaust the available grievance or arbitration procedures before suing under section 301. In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985), the Supreme Court held that the policy in favor of exhaustion of arbitration requires a state court to dismiss a section 301 claim that has not been fully arbitrated. At issue in *Lueck* was the fate of an employee's Wisconsin law tort claim arising from the employer's failure to pay disability benefits per a policy supplied under a CBA. *Lueck*, 471 U.S. at 206. The Court held that the claim was preempted because of its dependence upon the terms of the CBA. *Lueck*, 471 U.S. at 218. The Court observed that preemption in such circumstances preserves the role of arbitration in federal labor law:

"Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of a good-faith obligation under a contract, the arbitrator's role in every case could be bypassed easily if § 301 is not understood to pre-empt such claims. Claims involving vacation or overtime pay, work assignment, unfair discharge—in short, the whole range of disputes traditionally resolved through arbitration—could be brought in the first instance in state court by a complaint in tort rather than in contract. A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness [citation], as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Lueck*, 471 U.S. at 219-20.

The *Lueck* Court further held that two options exist when a state-law claim is preempted: "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must *either* be treated as a § 301 claim [citation] *or* dismissed as pre-empted by federal labor-contract law." (Emphases added.) *Lueck*, 471 U.S. at 220. In *Lueck*, neither possibility would allow the employee to recover: the employee's case "should have been dismissed for failure to make use of the grievance procedure established in the [CBA] [citation], or dismissed as pre-empted by § 301." *Lueck*, 471 U.S. at 220-21.

¶ 45    We observe that the *Lueck* Court did not suggest that the plaintiff's failure to exhaust grievance and arbitration procedures had deprived the Wisconsin courts of jurisdiction over the plaintiff's claim. This is striking, given the Supreme Court's insistence that the matter of a lower court's subject-matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535

U.S. 625, 630 (2002). Indeed, the Supreme Court—like other courts—has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *E.g.*, *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Thus, we deem that, by itself, the holding in *Lueck* is a strong indication that the Supreme Court did *not* deem that the employee's failure to exhaust arbitration procedures was a bar to subject-matter jurisdiction in the state court.

¶ 46    In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), the Supreme Court expanded on the preemption standard it set out *Lueck*. In *Lingle*, an employee claimed that she was wrongfully fired for filing what her employer deemed to be a false workers' compensation claim. *Lingle*, 486 U.S. at 401. She sought arbitration of a wrongful discharge claim under her CBA but simultaneously sued in Illinois courts on a state-law theory of wrongful discharge. *Lingle*, 486 U.S. at 401-02. The employer successfully sought removal of the matter to federal court based on diversity of citizenship between the parties and then moved for dismissal because the employee's claim was preempted by section 301. *Lingle*, 486 U.S. at 402. The district court and the circuit court agreed that the employee's claim was preempted under section 301. *Lingle*, 486 U.S. at 402.

¶ 47    The Supreme Court disagreed. It acknowledged that section 301 was designed to preempt a broad range of state-law claims. Principally, section 301 "not only provides federal-court [federal question] jurisdiction over controversies involving [CBAs], but also 'authorizes federal courts to fashion a body of federal law for the enforcement of these [CBAs].' " *Lingle*, 486 U.S. at 403 (quoting *Lincoln Mills*, 353 U.S. at 451). Therefore, section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of [CBAs], and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle*, 486 U.S. at 404. Consequently,

"*if the resolution of a state-law claim depends upon the meaning of a [CBA], the application of state law (which might lead to inconsistent results since there could be as*

*many state-law principles as there are States) is pre-empted and federal labor-law principles \*\*\* must be employed to resolve the dispute.*" (Emphasis added.) *Lingle*, 486 U.S. at 405-06.

However, "as long as [a] state-law claim can be resolved without interpreting the [CBA] itself, the claim is 'independent' of the [CBA] for § 301 pre-emption purposes" and thus may be addressed under state law no matter whether arbitration has been exhausted. *Lingle*, 486 U.S. at 410-11. Illinois's law of retaliatory discharge was sufficiently independent of the agreement that the employee's suit could proceed under Illinois law. *Lingle*, 486 U.S. at 412-13.

¶ 48    With this background, we return to the disagreement between *NFLPA* and *Staudner*, starting with *NFLPA*, the earlier case. *NFLPA* appears to assert that there is controlling Supreme Court precedent that courts, state and federal alike, have no jurisdiction to hear claims arising under section 301 when those claims are not fully arbitrated. Notably, the primary cases it cites in support of this claim, most significantly *Vaca*, address the powers of state courts. Thus, were *NFLPA* correct about the precedent, we would be compelled to conclude that the exhaustion requirement is jurisdictional in all courts. However, *Staudner*, not *NFLPA*, is correct about *Vaca*, and *NFLPA*'s reliance on other Supreme Court decisions also fails.

¶ 49    In *NFLPA*, the plaintiff, citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006), asked the Fifth Circuit to reconsider its precedents treating as jurisdictional the exhaustion requirement. *NFLPA*, 874 F.3d at 226-27. *Arbaugh* is one case in a relatively recent line of Supreme Court cases that caution against a tendency to treat as jurisdictional congressionally created preconditions for bringing federal suits. See, *e.g.*, *Fort Bend County v. Davis*, 587 U.S. ___, ___,139 S. Ct. 1843, 1848-49 (2019) (noting that the Court has attempted in recent years to curb the overuse of jurisdictional labels and "stress[ing] the distinction between jurisdictional prescriptions and

nonjurisdictional claim-processing rules"); *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) ("Because the consequences that attach to the jurisdictional label may be so drastic, we have tried in recent cases to bring some discipline to the use of this term."); *Arbaugh*, 546 U.S. at 511 (noting that courts have been "less than meticulous" in distinguishing jurisdictional from nonjurisdictional prescriptions). As *Miller*, 926 F.3d at 901, and other circuit court cases point out, this line of cases has questioned the vitality of older cases describing such limits as jurisdictional.

¶ 50     The *NFLPA* court, over a dissent, rejected the suggestion that, in *Arbaugh* and related cases, the Supreme Court had changed its position on whether the exhaustion-of-arbitration requirement is jurisdictional. It concluded that *Vaca* and other cases show that the Supreme Court

> "has long treated the exhaustion of grievance procedures provided for in [CBAs] as jurisdictional. [Citations.] Moreover, exhaustion is not a claims-processing rule that goes to the timing of filing a lawsuit. Instead, [under *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965),] it is a rule reflecting the forum in which an employee's remedy lies, which is the grievance procedures to settle disputes under the LMRA. [Citations.] *** Given that Congress has left undisturbed the Supreme Court precedent holding the exhaustion of remedies is a jurisdictional prerequisite to bring an action alleging a breach of a [CBA], the court declines to hold that [existing Fifth Circuit precedent] is no longer good law in light of *Arbaugh*." *NFLPA*, 874 F.3d at 227.

¶ 51     The *Staudner* court disagreed, noting that it accepted the *NFLPA*'s dissent's position that "the Supreme Court's cases make exhaustion [(of arbitration procedures)] 'a prudential consideration and not a strict jurisdictional prerequisite.' " *Staudner*, 910 F.3d at 148 n.2 (quoting *NFLPA*, 847 F.3d at 232 (Graves, J., dissenting)). The *Staudner* court first pointed out that the Supreme Court had recognized at least two clear exceptions to the requirement that a plaintiff

exhaust arbitration procedures before suing under section 301: (1) "an employee may forego [*sic*] exhaustion where the union breached its duty of fair representation in its handling of the employee's grievance," and (2) "an employee need not exhaust when the conduct of the employer amounts to a repudiation of *** contractual [arbitration] procedures." (Internal quotation marks omitted.) *Staudner*, 910 F.3d at 145. Next, it noted that "the [(Supreme) Court has 'no authority to create equitable exceptions to jurisdictional requirements.' " *Staudner*, 910 F.3d at 147 (quoting *Bowles v. Russell*, 551 U.S. 205, 214 (2007)). Thus, "[b]ecause a court may not excuse a lack of jurisdiction on equitable grounds [citation], it follows that the exceptions to § 301(a) exhaustion are exceptions to a *nonjurisdictional* rule." (Emphasis in original.) *Staudner*, 910 F.3d at 147. *Staudner* continued:

> "[T]he Supreme Court has described exhaustion under § 301(a) *** as a rule crafted by the Court to advance Congress's preference for private resolution of labor disputes. It is 'federal labor policy,' the Court has explained, that 'requires *** individual employees wishing to assert contract grievances' at least to '*attempt* use' of contractual grievance processes. [Citation.] Because contract grievance procedures are 'a preferred method for settling disputes and stabilizing the "common law" of the plant' [citation], exhaustion will be required—but only where, as discussed above, the benefits for labor stability are not outweighed by countervailing employee equities [citation]. Even if the Supreme Court could expand or contract federal court jurisdiction, in other words, it has not purported to do so here." (Emphasis in original.) *Staudner*, 910 F.3d at 147-48.

We conclude that *Staudner* read the Supreme Court precedent correctly and that *NFLPA* did not.

¶ 52 The Supreme Court cases on which *NFLPA* principally relied are *Vaca*, *United Paperworkers International Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29 (1987), and, to a lesser

extent, *Maddox*. See *NFLPA*, 874 F.3d at 227. The *NFLPA* court read *Vaca* as "discussing when judicial review is available if grievance procedures have not been exhausted" and *Misco* as "holding jurisdiction to enforce a [CBA] only vests once grievance and arbitration procedures are exhausted." *NFLPA*, 874 F.3d at 227. *NFLPA* quoted *Vaca* in holding that, "[o]utside of limited circumstances, the failure to 'fully exhaust[ ]' contracted for 'grievance procedures' places an employee's claim for breach of a [CBA] beyond 'judicial review.' " *NFLPA*, 874 F.3d at 226 (quoting *Vaca*, 386 U.S. at 184-85). It also quoted *Misco* in holding that, "[w]hile courts have jurisdiction to enforce collective bargaining contracts, 'where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute.' " *NFLPA*, 874 F.3d at 226 (quoting *Misco*, 484 U.S. at 37). Finally, it stated that *Maddox* teaches that the proper "forum" for an employee to find his or her remedies is "the grievance procedures to settle disputes under the LMRA." *NFLPA*, 874 F.3d at 227.

¶ 53 We have no significant dispute with the *NFLPA* court's reading of *Maddox*. Parties to a dispute that is dependent on the construction of a CBA are required to use any grievance and arbitration mechanisms provided for by the CBA. However, the court's readings of *Misco* and *Vaca* are not defensible. *Vaca* suggests that the exhaustion requirement is nonjurisdictional, as does *Misco*, albeit less clearly.

¶ 54 The overarching question in *Vaca* was whether claims that a union has breached its duty of fair representation allege unfair labor practices under section 8(a) of the NLRA and thus fall within the exclusive jurisdiction of the NLRB—in other words, whether *Garmon* preemption applies to such claims. See *Vaca*, 386 U.S. at 176-77. *Vaca* held that *Garmon* preemption did not

apply. But, critical for our discussion, underlying the *Vaca* Court's reasoning was a desire to give trial courts the flexibility necessary to address the many ways the arbitration process may fail.

¶ 55    *Vaca*, although legally complex, is simple enough in outline. An employee filed an action in the Missouri state courts against his union, alleging that his employer breached the applicable CBA when it fired him and that his union had wrongfully declined to fully arbitrate the issue on his behalf. *Vaca*, 386 U.S. at 173. A jury awarded damages to the employee, but the trial judge set aside the verdict, ruling that the NLRB had exclusive jurisdiction. *Vaca*, 386 U.S. at 173-74. The Supreme Court accepted the case after the appellate court affirmed the ruling and the Supreme Court of Missouri reversed it. *Vaca*, 386 U.S. at 174. The *Vaca* Court held that the Missouri courts had jurisdiction over the case. *Vaca*, 386 U.S. at 188. However, it determined that, because the evidence presented did not show that the union acted wrongfully in declining to arbitrate the employee's claim, the Supreme Court of Missouri erred in reinstating the award of damages. *Vaca*, 386 U.S. at 191-93.

¶ 56    The portion of *Vaca* most pertinent here is the Court's discussion of the types of section 301 claims that trial courts should have the power to address. It concluded that one reason that trial courts should have jurisdiction of fair-representation claims was that an "intricate relationship [exists] between the duty of fair representation and the enforcement of collective bargaining contracts." *Vaca*, 386 U.S. at 183. The "intensely practical considerations" arising from that relationship necessitate that trial courts hear incompletely arbitrated cases in some circumstances. *Vaca*, 386 U.S. at 183, 185-86.

¶ 57    Because the union and the employer typically control the arbitration procedures, such procedures "may well prove unsatisfactory or unworkable for the individual grievant." *Vaca*, 386 U.S. at 185. "The problem then is to determine under what circumstances the individual employee

may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures." *Vaca*, 386 U.S. at 185.

> "An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures. [Citations.] In such a situation (*and there may of course be others*), the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action." (Emphasis added.) *Vaca*, 386 U.S. at 185.

Fair-representation cases are another necessary exception: a "wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." *Vaca*, 386 U.S. at 186.

¶ 58    We take all of this to mean that a trial court needs the flexibility to enforce a CBA regardless of how it is breached and by what party. Thus, we understand the *Vaca* Court's view to be inconsistent with a jurisdictional understanding of the exhaustion-of-arbitration requirement, which would leave no room for court-made exceptions.

¶ 59    To be sure, the *Vaca* Court emphasized that an attempt at arbitration must precede the filing of a section 301 claim. *Vaca*, 386 U.S. at 184. However, the Court indicated that the enforcement mechanism was nonjurisdictional:

> "[I]f the wrongfully discharged employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well *defend* on the ground that the exclusive remedies provided by such a contract have not been exhausted. Since the employee's claim is based upon breach of the [CBA], he is bound by terms of

that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement." (Emphasis added.) *Vaca*, 386 U.S. at 184-85.

The natural reading of this is that the *Vaca* Court expected state courts to treat the failure to exhaust arbitration *as a defense*.

¶ 60    We find it impossible to believe that, in these passages, the *Vaca* Court intended to set up a scheme in which exhaustion of arbitration is a jurisdictional prerequisite *unless* the plaintiff pleads one of the two explicitly described exceptions, in which case exhaustion *becomes a defense*. Yet that is how the *NFLPA* court read *Vaca*. Relying on the foregoing passages, *NFLPA* reads *Vaca* to hold that, "[o]utside of limited circumstances, the failure to 'fully exhaust[ ]' contracted for 'grievance procedures' places an employee's claim for breach of a [CBA] beyond 'judicial review.' " *NFLPA*, 874 F.3d at 226 (quoting *Vaca*, 386 U.S. at 184-85). This reading is not supported by the text. *NFLPA* took the "ransom note" approach to paraphrasing—gathering textual clippings piecemeal with no concern for context. The phrases "grievance procedures," "fully exhaust[ ]," and "judicial review" are collected from the following two sentences: (1) "However, if the wrongfully discharged employee himself resorts to the courts before the *grievance procedures* have been *fully exhausted*, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted" and (2) "The problem then is to determine under what circumstances the individual employee may obtain *judicial review* of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures." (Emphases added.) *Vaca*, 386 U.S. at 184-85. The holding *NFLPA* suggests is found nowhere in the language of *Vaca*.

¶ 61 *Misco*, like *Vaca*, supports a nonjurisdictional understanding of the section 301 exhaustion requirement. *Misco*'s sole explicit jurisdictional holding is this: "The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted *and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute*." (Emphasis added.) *Misco*, 484 U.S. at 37. The *NFLPA* court reads this as "holding [that] jurisdiction to enforce a [CBA] only vests once grievance and arbitration procedures are exhausted." *NFLPA*, 874 F.3d at 227. This reading is illogical. The *Misco* Court was explicit that a trial court *must* have jurisdiction to order compliance with arbitration requirements. The Court in no way suggested that such jurisdiction arises only because the plaintiff has managed by proper pleading to invoke an exception to a jurisdictional prerequisite based on the exhaustion of arbitration.

¶ 62 Again we cite *Sweeney*'s observation that Congress did not mandate that all CBAs provide for grievance or arbitration procedures. Congress could have done so if it believed that arbitration should be the forum with exclusive jurisdiction over certain cases.

¶ 63 In sum, we agree with *Staudner* that the Supreme Court has not treated the exhaustion requirement as a jurisdictional limit on lower courts, state or federal. Moreover, we read *Lueck*, *Vaca*, and *Misco* to indicate that the requirement is *nonjurisdictional*. Given the default position that state courts have jurisdiction over federal-law claims (*supra* ¶ 28), we are confident that the trial court here had subject-matter jurisdiction.

¶ 64 Defendant, of course, would have us read *Miller* for the opposite conclusion. However, *Miller* is inapposite because the court there declined to decide the very issue—whether exhaustion of arbitration is a jurisdictional requirement—that would have guided us.

¶ 65     Before we address the substance of *Miller*, a case under the RLA, we caution against assuming that *everything* it holds applies directly to section 301 of the LMRA. Although the RLA and the LMRA are legislative siblings, they are not twins. As one court explains:

> "The source of the obligation to arbitrate differs between the RLA and the LMRA. The RLA creates the obligation, providing for CBA disputes to be resolved through grievance and arbitration, and requiring 'adjustment boards' to be created for the arbitration. [Citations.] LMRA § 301, on the other hand, protects contractually created obligations. It provides, as a matter of federal common law, for the specific performance of CBA terms requiring the grievance and arbitration of disputes. [Citations.] Such terms are not mandated by statute. But ***, in practice, [a]rbitrators are delegated by nearly all [CBAs] as the adjudicators of contract disputes ***." (Internal quotation marks omitted.) *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 918 n.7 (9th Cir. 2018).

In the rail industry, "[m]inor disputes *** are arbitrated before the National Rail Adjustment Board." *Schurke*, 898 F.3d at 917 n.6. In the airline industry, "minor disputes *** are arbitrated before the specific 'system board of adjustment' set up by each airline industry CBA," as no National Air Transport Board was ever created. *Schurke*, 898 F.3d at 917 n.6. "[T]he jurisdiction of the [National Railway Adjustment] Board to adjust grievances and disputes [arising under existing CBAs] is exclusive." *Slocum v. Delaware, Lackawanna & Western R.R. Co.*, 339 U.S. 239, 244 (1950).

¶ 66     Echoing the point made in *Sweeney*, 926 F.2d at 39, we note that Congress mandated arbitration under the RLA but not under section 301 of the LMRA. This does not mean that section 301 has narrower preemptive scope than the RLA. In *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 263 (1994), the Supreme Court held that the *Lingle* preemption standard applies to both

section 301 of the LMRA and the RLA. Thus, defendant is correct that "the preemption analysis under the RLA and LMRA [is] nearly identical." But the *Lingle* standard addresses what substantive law applies (*supra* ¶¶ 44, 46-47 ; it is not a jurisdictional standard. Thus, we cannot *assume* that Congress intended the same jurisdictional rules to apply under section 301 and the RLA.

¶ 67    Although the issue presented in *Miller* was whether a claim under the Privacy Act was preempted by the RLA—a matter potentially relevant to preemption under section 301—the court's analysis ultimately tells us nothing about the jurisdictional effect of the failure to exhaust arbitration under section 301. This is because *Miller* explicitly declined to address the jurisdictional character of the exhaustion requirement under the RLA.

¶ 68    *Miller* decided two consolidated appeals concerning Privacy Act claims made against airlines by their employees, who had CBAs governed by the RLA. *Miller*, 926 F.3d at 900-01. The district court in each case dismissed the matter, finding that it ought to be heard by an adjustment board under the RLA. *Miller*, 926 F.3d at 901-02. However, one of the courts said that, because the dispute had not been arbitrated, the case was dismissed due to "improper venue." *Miller*, 926 F.3d at 901. The circuit court agreed that the suits were preempted because they implicated the CBAs. *Miller*, 926 F.3d at 903-04. However, though the *Miller* court held that the "venue"-based dismissal was a mislabeling, it declined to say whether the dismissal should have instead been labeled as (1) a judgment on the pleadings—a nonjurisdictional disposition—or (2) a dismissal for lack of subject-matter jurisdiction. *Miller*, 926 F.3d at 901. The court noted that "[n]one of this circuit's decisions considers the effect of the Supreme Court's modern understanding of the difference between 'jurisdiction' and other kinds of rules" as expressed in *Davis* (which it cited) or *Arbaugh* (which it did not cite). *Miller*, 926 F.3d at 901. The court deemed it "unnecessary to

do so," as "either a substantive or a jurisdictional label ends the litigation between these parties and forecloses its continuation in any other judicial forum." *Miller*, 926 F.3d at 901. Thus, *Miller* declined to decide this issue, but our reading of *Arbaugh* indicates that it probably should have. See *Arbaugh*, 546 U.S. at 514 ("[C]ourts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").

¶ 69 To be sure, the *Miller* court did note that the Seventh Circuit's cases on the failure to exhaust arbitration under the RLA suggested that the proper disposition was a dismissal for lack of subject-matter jurisdiction. See *Miller*, 926 F.3d at 901 (citing cases). But the *Miller* court expressly declined to take a side.

¶ 70 Defendant asserts that a long string of cases has followed *Miller* in holding that, "when Section 301 of the LMRA preempts [Privacy Act] claims, courts are deprived of subject-matter jurisdiction over those claims." The fundamental problem is, of course, that *Miller* never says this about section 301; it does not even make a similar jurisdictional claim about the RLA. Moreover, defendant does not tell us where it thinks that *Miller* says this. Although the argument section of defendant's brief contains more than 20 mentions of *Miller*—and, more impressively, "*Miller* and its progeny"—it quotes *Miller* just three times. Also, despite repeatedly telling us that *Miller* is dispositive on the issue of subject-matter jurisdiction, defendant never directs us to the actual language that holds what defendant claims. Indeed, defendant quotes the *Miller* court's words only three times, and never on the issue of subject-matter jurisdiction.

¶ 71 Because *Miller* declined to decide the issue of the jurisdictional effect of the failure to exhaust arbitration, a court can, strictly speaking, follow *Miller* only by abstaining in similar circumstances. Nevertheless, defendant asks us to consider six unpublished federal district court

decisions that purportedly follow *Miller* on the issue of the jurisdictional effect of the failure to exhaust arbitration. "Unpublished federal decisions are not binding or precedential in Illinois courts." *King's Health Spa, Inc. v. Village of Downers Grove*, 2014 IL App (2d) 130825, ¶ 63. We note that one of the decisions, *Gray v. University of Chicago Medical Center, Inc.*, No. 19-cv-04229, 2020 WL 1445608, at *4 (N.D. Ill. Mar. 25, 2020), *precisely* followed *Miller* by being noncommittal on the issue of whether failure to exhaust arbitration is jurisdictional: it "dismissed [the plaintiff's claims] either for want of subject matter jurisdiction *** or on the pleadings." (Internal quotation marks omitted.) To be sure, several of the decisions, such as *Gil v. True World Foods Chicago, LLC*, No. 20-C-2362, 2020 WL 7027727, at *2 (N.D. Ill. Nov. 30, 2020), use language consistent with defendant's equation of preemption with lack of jurisdiction. However, each does so without sufficient analysis for us to understand the court's reasoning. And, of course, they are not binding on us. We, therefore, do not consider them in our analysis.

¶ 72    *Fernandez v. Kerry, Inc.*, 14 F.4th 644 (7th Cir. 2021), was decided after this case was fully briefed, and we allowed defendant to cite it as additional authority. *Fernandez* supports our conclusion that the failure to exhaust arbitration is nonjurisdictional under section 301. The *Fernandez* court held that the preemption analysis that *Miller* applied to claims under the RLA about clocking in and out was equally applicable to such claims under section 301. *Fernandez*, 14 F.4th at 646. The *Fernandez* plaintiffs filed a claim in Illinois courts under the Privacy Act; the defendant removed it to federal court based on, essentially, diversity of citizenship. *Fernandez*, 14 F.4th at 645. The defendant then moved to dismiss the claim as preempted under section 301, and the district court granted the motion. *Fernandez*, 14 F.4th at 645. The circuit court affirmed without noting any jurisdictional issues. Moreover, the court declined the plaintiffs' request to order arbitration. The court did so not because either "preemption" or failure to exhaust arbitration had

deprived the courts of subject-matter jurisdiction, but because it was "not authorized to usurp the union's authority to decide whether a grievance with management needs an arbitrator's resolution." *Fernandez*, 14 F.4th at 647. This is a strong statement of the union's power. However, we cannot construe it as a statement of a lack of jurisdiction, especially given that federal courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Friend*, 559 U.S. at 94.

¶ 73    The remaining published post-*Miller* cases defendant cites are not relevant. The primary issue in *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020) was whether biometric privacy claims produce "injur[ies] in fact" such that a plaintiff has article III standing to bring such a claim in federal court (see U.S. Const., art. III, § 2)—an entirely different question of subject-matter jurisdiction from the one at issue here.

¶ 74    We conclude that the applicable Supreme Court precedent does not indicate that a state court loses subject-matter jurisdiction of section 301 claims when arbitration is not exhausted. Indeed, the Supreme Court's decisions strongly indicate otherwise. State courts are courts of general jurisdiction, presumed to have concurrent jurisdiction with the federal courts over issues of federal law. Thus, the absence of clear precedent suggesting that exhaustion of arbitration is a prerequisite to state-court jurisdiction is sufficient to conclude that the trial court here had subject-matter jurisdiction.

¶ 75                    B. Preemption and Waiver of Arbitration

¶ 76    Although the trial court decided this case on the ground that it lacked subject-matter jurisdiction, we may affirm an involuntary dismissal upon any grounds supported by the record. *E.g.*, *Masters v. Murphy*, 2020 IL App (1st) 190908, ¶ 9. Defendant sought dismissal of plaintiffs' complaint on two bases: the trial court lacked subject-matter jurisdiction and plaintiff's claims

were preempted by federal law. Plaintiffs do not dispute that their claims were preempted in the choice-of-law sense. Given this concession, we need not decide whether to adopt the preemption analysis set out in *Miller* and *Fernandez*. However, plaintiffs argue that their claims should survive because defendant (1) forfeited its preemption defense and (2) waived its right to arbitration. We disagree.

¶ 77     As we noted, *Lueck* teaches that, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim [citation], or dismissed as pre-empted by federal labor-contract law." *Lueck*, 471 U.S. at 220. Thus, a properly raised preemption defense is a basis for dismissing state-law claims.

¶ 78     Plaintiffs, citing the concurrence in *Stoll v. United Way of Champaign County, Illinois, Inc.*, 378 Ill. App. 3d 1048, 1056-58 (2008) (Myerscough, J., specially concurring), suggest that defendant forfeited the defense of preemption by failing to timely raise it. However, plaintiffs fail to address our case law on what makes a defense timely.

¶ 79     Under Illinois law, a party can forfeit an affirmative defense by failing to timely raise it in the trial court. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252-53 (2010); see *St. Louis Southwestern Ry. Co. v. Dickerson*, 470 U.S. 409, 411 (1985) (holding that state procedural law applied in state-court litigation of a federal-law claim). We have held that an affirmative defense is timely if raised in a motion for summary judgment. See *Falcon Funding, LLC v. City of Elgin*, 399 Ill. App. 3d 142, 156 (2010). At least one case holds that, with exceptions, an affirmative defense must be raised no later than in the answer. *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 51. Under either standard, the preemption defense was timely raised here, as defendant had not yet answered. Plaintiffs might be taken to argue that the right to arbitration is also an affirmative

defense. Assuming for the sake of argument that it is an affirmative defense, we hold that defendant timely raised it just as it timely raised its preemption defense.

¶ 80    Because we conclude that neither potential defense was forfeited under Illinois law, we need not address whether, on this issue, section 301 preempts Illinois procedural law. States may not, under the guise of setting neutral procedural rules, place conditions on the vindication of a federal right. *Felder v. Casey*, 487 U.S. 131, 147 (1988). Our analysis here vindicates the federal right to enforcement of a CBA's arbitration clause.

¶ 81    Plaintiffs, citing *Watkins v. Mellen*, 2016 IL App (3d) 140570, ¶ 14, *Gateway Drywall & Decorating, Inc. v. Village Construction Co.*, 76 Ill. App. 3d 812, 815-16 (1979), and other Illinois cases, argue that, *under Illinois law*, the contractual right to arbitration is "waived when a party submits a substantive matter to the [c]ourt for decision." However, such a waiver could not negate defendant's choice-of-law preemption defense, which is a basis for dismissal independent of whether arbitration was required.

¶ 82    In any event, Illinois's law on contract waiver is preempted by section 301 as it applies to CBAs. As we noted, under section 301, the preemption is such that "substantive principles of federal labor law must be paramount in the area covered by the statute" so that "issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy." *Lucas Flour Co.*, 369 U.S. at 103. Further, under section 301, "Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Lucas Flour Co.*, 369 U.S. at 104. To apply state-law contract-waiver rules to CBAs would negate that necessary uniformity. The need for uniformity applies with particular force, given that the encouragement of arbitration is one of the central "polic[ies] of our national labor laws." *Lincoln Mills*, 353 U.S. at

456. Plaintiffs would have to show that defendant waived its right to arbitration under federal law. They attempt no such showing.

¶ 83    Thus, we conclude that, although the trial erred in dismissing the complaint for want of subject-matter jurisdiction, the dismissal must be affirmed because defendant properly raised the defense that the Privacy Act claims were preempted by section 301.

¶ 84                                III. CONCLUSION

¶ 85    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 86    Affirmed.

---

2022 IL App (2d) 200563

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 19-L-136; the Hon. Dorothy French Mallen and the Hon. Bryan S. Chapman, Judges, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | David J. Fish and Mara Baltabols, of Fish Law Firm, P.C., of Naperville, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Jody Kahn Mason, Jason A. Selvey, and Jonathan B. Cifonelli, of Jackson Lewis P.C., of Chicago, for appellee. |

---